Hawkins, Justice,
delivered the following opinion :
This was an action of assumpsit brought originally against the defendant Doggett and J. W. Gotten. Cotten dying before the trial, the suit abated as to him, but continued as to Doggett.
The declaration contained a special count on the note, and the usual money counts. The note declared on was in the following words and figures, to wit
*360 “ On or before the first day of January next, we or either of us promise to pay Isaac W. Mitchell or order, fifteen thousand nine hundred and fifty-five dollars, with ten per cent, interest from date, for value received this the 2d day of January, 1841.”
“H. DOGGETT,
“ J. W. COTTEN.”
(Endorsed),
“ Received the interest on the within note up to the first day oí January, eighteen hundred and forty-four, this the 5th January, 1844.”
To the declaration the defendant pleaded the general issue and notice of usury. The notice sets up, that the defendants being indebted to the plaintiff in the sum of $14,504 65, on the second day of January, 1840, it was agreed by and between them, that in consideration of forbearance by the plaintiff for the space of one year, to wit, from the second day of January, 1840, until the first day of January, 1841, the defendants would agree to give and allow to the plaintiff the sum of $1,813 01, by way of interest for said forbearance. The notice then avers that this interest was at a greater rate than at the rate of ten per cent, per annum, to wit, at the rate of twelve and a half percent.; and that in pursuance of such corrupt and usurious agreement, the defendants executed and delivered, and the plaintiff accepted, his further note for the (amount) of $362 61. That the defendant will insist, that the said note is void as to so much as is for interest on $14,504 65; that is to say, for the said sum of $1813 01. And the notice further avers that on the 2d day of January, 1841, the defendant being indebted to the plaintiff in the sum of $13,186 05, with the interest thereon, at- the rate of ten per cent, per annum, from the 1st day of January, 1839, it was corruptly and usuriousiy agreed by and between them, that said plaintiff would forbear and give day of payment for the further space of one year, until the first day of January, 1842, in consideration that the defendant would give and allow to said plaintiff for interest on said sum of $13,186 05, for three years from the first day of January, 1839, to 1st January, 1842, the sum of $5125 98, being more than at the rate of ten per cent., but at the rate of twelve 95-100ths, for the forbearance of one hundred dollars for one year ; and that in pursuance of such usurious agreement, the defendant did on the second day of January, 1841, execute and deliver to said plaintiff the note in the declaration men *361 tioned ; and the said defendant, Doggett, did on the same day and year execute and deliver his further- note for $362 61, payable on the first day of January, eighteen hundred and forty-two, and his note for $398 87, payable on the first day of January, 1842, all which were accepted by plaintiff; and that it will be insisted that the sum of $5125 98, being for interest from the fjggt day of January, 1839, when usurious interest was first taken, was and is void.
On Monday, the 25th day of May, 1846, the cause came to trial, and the plaintiff gave in evidence the note as before set forth.
On the part of the defendant witnesses were introduced, who swear that the following papers were in the ndwriting of Mitchell:
1. “On or before the first day%f January next, we jointly and severally, promise to pay Isaac W. Mitchell, or order, thirteen thous- and one hundred and eighty-six dollars, for value received, with ten per cent, interest from date, this the 1st January, 1839.”
(Endorsed on face, “ Paid — H. Doggett.”)
2.- “ On or before the first day of January next, I promise to pay Isaac W. Mitchell or order, three hundred and sixty-two dollars sixty-one cents, for value received, this the 2d day of January, 1841.
“H. DOGGETT.”
3.“ On or before the first day of January next, I promise to pay Isaac W. Mitchell, or order, three hundred and ninety-eight dollars and eighty-seven cents, for value received, this the 2d January, 1841.
“H. DOGGETT.”
4.“ One day after date, I promise to pay Isaac W. Mitchell, or bearer, at Tallahassee, six thousand six hundred and seventy-six dollars, and sixty-four cents, for value received, with ten per cent, interest from the first day of the present month, this the fifth day of January, 1844.
H. DOGGETT, [seal].”
J. H. T. Lorimer was introduced as a witness, who proved that the following notes were in the handwriting of one William Flake:
5,“ One day after date, we jointly and severally promise to pay William Flake, or bearer, five thousand and sixteen dollars, for value received.
“ Jan’y. 1, 1838.”
(Endorsed),
“ Jan’y 1, 1838. Received of the within note, four hundred and thirteen dollars and fifty cents. Received on the within note, one *362 thousand three hundred and sixty-nine dollars and 11-100, January 1st, 1838.”
6. “ On or before the first^f January, eighteen hundred and thirty-nine, we jointly and severally promise to pay William Flake, or bearer, eight thousand three hundred and thirty-three dollars, with inter-terest from the 13th Dumber, eighteen hundred and thirty-six, for value received,
“ H. DOGGETT,
“J. W-. COTTEN.”
“ January 1st, 1838.”
Besides these notes, certaij^ papers were introduced by the defendant Doggett. ’ Upon them were figures and calculations, sworn to be those of Mitchell. They appear to have been so clearly made in connexion with the note sued on, and the other notes before set forth, and so clearly to have reference to them and the transactions between the parties, and carry upon their face so strong evidence of the true nature of the whole affair, that we think the Court below was right in submitting them as testimony to the jury, for their consideration.
Upon this evidence the case went to the jury, and a verdict was found for the plaintiff for fourteen thousand one hundred and forty-one dollars and ninety-nine cents.
From the notes as produced in evidence for defendant, and the exhibits containing the figures and calculations of Mitchell, the following may be stated as the facts of the case :
Originally there were two notes given by Doggett and Cotten to William Flake,
One dated 1 Jan’y, 1838, $ 5,016 00
Credited by payments to, 1,782 16
Which deducted leave, $ 3,233 34
Interest to first January, 1839, 258 66
Making, $ 3,492 00
The other note from same date, with interest from 13th December, 1836, 8,333 00
Interest to 1st January, 1839, 1,361 05
Two notes added together, $13,186 05
*363 On the first day of January, 1839, a new note was given for this amount, by Doggett and Cotten, and payable to Mitchell, (see, 1), who would seem to have obtained the two notes from Flake. The following statement may illustrate the true situation of the whole affair :
$13,186 05
10 pr. ct. int. to 1st Jan’y, 1840, 1,318 60
$14,504 65
(Inter’t on this amt. 2 1-2, to 1840, is $362 61, for which note marked 2 was given.) Int. to 1 January, 1841, 1,450 40
For this amt. note sued on was given, $15,955 05
10 pr. ct. interest to January, 1842, is ' 1,595 50
1,595 50
2 1-2 pr. ct. to Jan., 1842, is $398 87, which with compound interest at 12 1-2, to 1 Jan., 1844, is (Note 3) 507 06
Interest to Jan’y, 1843, $17,550 55 1,755 05
2 1-2 pr. ct. to Jan’y, 1843, is 1,755 05 • 438 75
10 pr. ct. to 1 Jan’y, 1844, $19,305 60 1,930 56
2 1-2 to 1 Jan’y, 1844, 1,930 56 449 73
$21,236 16 $6,676 65
The aggregate of these amounts carried out, would seem to constitute the note of 1844, marked 4.
The errors assigned by the plaintiff are as follows:
1. The Court erred in admitting as evidence the papers marked C. D. E. F. G. & H., and A. & B.
2. The Court erred in refusing the 1st, 2d and 3d instructions asked for by the plaintiff, and in substituting the instruction it gave for the 3d above named.
*364 3d. The Court erred in allowing the 1st, 2d, 3d, 4th and 5th instructions asked for by defendant.
4th. The Court erred in giving instructions 1st and 2d, named in die bill of exceptions, and given after allowing instructions for defendant.
The first question for the consideration of the Court, is the effect oí the repeal of the statute of usury of 1833, by the act of 1844. The first section of the act of 1833, is to this effect: That no person shall upon any contract take, directly or indirectly, for the loan of any money, &c., above the rate of ten dollars for the loan of one hundred dollars for one year; and all bonds, «fee., for payment or delivery oí any money, goods or merchandize, to be lent, on which a higher rate of interest is received or taken, shall forfeit the amount of said interest. Section 2d, is to the effect, that any person taking, accepting or receiving, above the rate of ten dollars for the forbearance of one hundred dollars for one year, shall forfeit and lose for every such offence the whole amount of interest due ; one half to be paid into the treasury of the county where the offence is committed, and the other half to him or them who will inform and sue for the same, to be recovered in an aetion of debt in any competent court. Section 3ot declares, that when any note or notes, &c., shall be upon, or on account of, any usurious contract, the interest on the same shall be void, and the obligor, or obligors, forever exonerated from the payment of the same, &c.
On the 15th day of March, 1844, the two first sections of the foregoing act of 1833, were repealed, and new sectioná substituted.
There can be no doubt of the truth or validity of the assertion, that where there is a repeal of a penal statute, no penalty can be enforced, nor punishment inflicted, for violations of the law while in force, unless some special provisions were made for the purpose.— This principle is too well settled to admit of controversy. Nor can it be denied that the Legislature can alter or modify the remedy as to the enforcement of contracts, unless carried to the extent to take ¿way virtually, or substantially, the remedy.
If this were a case for the enforcement of the penalty, as prescribed under the second section of the act, the conclusion of the Court would be at once in accordance with the views of the counsel for appellant 5 but the Court think there is a broad distinction between a *365 Saw affecting the remedy, or creating a penalty, and a law in relation to the contract itself. The authorities, as cited for the plaintiff in error, are mainly directed to one or the other of the two first cases, viz., the law affecting the remedy, or in regard to the enforcement of a penalty, where the law creating it has been, repealed. The case at bar must stand upon the law in relation to the contract itself, and we can find no authority that declares, that a contract rendered void by statute, can, upon a repeal of that statute, acquire a vitality which it did not before possess. Sound policy, justice and morality, unite in stern opposition to such a principle.
On the other hand there are authorities entitled to the highest possible respect, which can be cited in support of the principle, we are prepared to assert, viz., where a contract is illegal, at the time of its inception, by force of a statute, no action can be maintained upon it, although the statute is repealed, which declared it illegal “ex nudo pacto, non oritur actio." Judge Story remarks, “ where a contract was made in France to smuggle goods into our own country in violation of our laws, the contract will be treated by our Courts as utterly void, as an intended fraud upon our laws. And in such a case, brought into controversy in our Courts, it will be wholly immaterial whether the parties are citizens or foreigners. So, if a collusive capture and condemnation are procured in our Courts by fraud of our laws by foreigners, who are even enemies at the time, their contract for the distribution of the prize proceeds will be held utterly void by our Courts; and it will make no difference that the laws have since been repealed, or that the war has since ceased, for the contract being clearly in fraud of the laws existing at the time, the execution of it ought not to be enforced by the Courts of the country, whose laws it was intended to evade.” Story’s Conflict of Laws. S05.
In Hannay vs. Eve, 3 Cranch, 242, we find the same doctrine as laid down by Judge Story, and the opinion of the Court pronounced by Chief Justice Marshall,
So in Jacques vs. Withy & Reid, 1 H. Black. R., 65. This case would appear analagous to that at bar. There was a statute of 19th George the 3d, in relation to the purchase and insuring of lottery tickets, with a penalty for an infringement of its provisions. It was ¡repealed by a statute of 22d of George 3d. The decision in this *366 case goes to the effect to declare that a contract declared by statute to be illegal, is not made good by a subsequent repeal of the statute.
The same principle is enforced in the case of the President, Directors & Co., of the Springfield Bank vs. Samuel Merrick, et. al., 14 Mass., 322. In Massachusetts there was a law that the bills and notes of Banks not incorporated by law, should not be received or •negotiated by the banking corporations of that State, under a heavy penalty. It was holden, that a promissory note payable in such bills to a banking corporation, made while the statute was in force, was void; and that no action could be maintained upon it, by the promis. ees after the statute was repealed. Chief Justice Parker remarks, that “ the subsequent repeal of a statute could have no effect upon a contract made while it was in force. As well might a contract made for the purpose of trade with an enemy, during a war, be purged of its illegality by the return of peace.” In the argument of the cause, the case of Camden vs. Anderson, 1 Bos. & Pul., 277, was cited by the counsel for the plaintiff in support of his side of the question.— Judge Parker says in relation to it: “ The case of Camden vs. Anderson does not prove the point it was cited to support. It would seem rather, from the provisions of the statute commented upon in that case, that when a penal statute was repealed, it might still be pleaded against any contract made in contravention of it, unless in the repeal act provision was made to the contrary.” We have examined the authorities cited for the plaintiff in error with attention; but we cannot think they are in point as to this case ; and even if they were, they must be borne down by the decisions cited, sanctioned as they are by the names of the great and illustrious jurists we have quoted. The plaintiff in error has cited the following from Dwarris on Statutes : “ When an act of Parliament is repealed, it must be considered (except as to those transactions past and closed) as if it never had existed.” Without intending to controvert this as a general proposition, we must remark that except as to the law in relation to remedies and penalties, it seems rather broadly and un-qualifiedly declared. Without stopping to ask if a contract consummated (though we think there is force in the suggestion) is not embraced by the terms “ transactions past and closed,” so as to bring it within the exception of this dictum, we find this principle met by another, which is not only the doctrine of the English law, but is *367 founded on principles of general jurisprudence, and it is this, “ that no statute shall be construed to have a retrospective operation without express words to that effect.” 7 Bacon Abr. Statute C., 439. “A retrospective statute would partake in its character of the mischief of an ex post facto law as to all cases of crimes and penalties, and in measures relating to contracts or property, would violate every sound principle.” Dwarris on Stat., 680, 681. Would we not, by applying the principle asserted to the case at bar, give the repealing law of 1844, an ex post facto operation, and really impair the obligation of con-' tracts ? The relative rights of the parties would certainly be changed by granting to one a privilege not before enjoyed, and imposing upon the other an obligation which previously did not exist under the law as it stood, at the time the contract was made. The law of 1833, declares that all interest over the rate of ten per cent, shall be void, and the obligor forever exonerated from the payment of the same. Is not this exoneration by virtue of the law governing the contract at the time it was entered into, a right — a right vested by the law of the land, (that it is a mere negative right can create no difference in principle), and can it now be divested by posterior- legislation 1
To admit all this, and to say that a contract declared a nullity by a statute, a contract that never had an existence, can, by the galvanic process of repeal of that statute, have infused into it a new life and being, so as to be enforced in a court of justice, we must admit, is at variance with all our notions of sound policy, morality and law. Having decided that the repeal of the statute of 1833, does not affect contracts entered into before its repeal, the case before us must therefore be governed by thatstatute, as though no repeal had ever taken place.
We are clearly of the opiniorij that by the letter and spirit of the statute, whenever illegal interest is taken or contracted for, the whole interest is void. The legal interest, when agreed for in conjunction with usurious interest, receives the taint of usury, and is extinguished and becomes at once nudum pactum. Nor is it necessary to establish usury as contended for by plaintiff in error, that the plaintiff actually took or received more for interest than the law declared lawful; and it is enough that it is only promised to be paid. Hammond vs. Hoppin, 13 Wendall, 505. So, ii at the time of a loan, a note be taken as a security for principal and usurious! interest, it will be in *368 ferred that the money was lent on usurious terms. Scott vs. Mitchell, 4 Doug., 318. And “if parties enter into usurious agreement, any remote security for any part of the illegal interest, or to enforce the tainted contract with a distinct and valid debt, cannot be enforc. ced.” 7 Pickering, 40. Chitty on Con., 706. 1 Greenleaf, 167. Moncure vs. Dermott, 13th Peters, 345.
In Jackson vs. Packard, 6 Wendell, 415, we see that a mortgage taken on a loan of-money including the taint of usury, destroys the whole security.
The point as to the necessity of proof of the receiving the interest, is clearly laid down in Clark vs. Badgley, 3 Halsted, 234. It is there decided, that if the contract be for usurious interest, although no usurious (interest) is taken, the contract is usurious; and it is immaterial whether the usurious interest is secured by a distinct instru. ment, or is included in the instrument which secures the principal.
So, in Warren vs. Crabtree, 1 Greenlf., 171, we find, “ if the principal and interest are secured by distinct notes, or the usury by a pa-rol promise only, and both are executed at the same time, all are void; because such promise to pay such interest, constituted a part of the contract for the loan, and the statute declares the whole contract void. If such a device could protect the lender from the penalties of the statute, it would always be evaded with impunity.”
In order to render the offence complete, so as to subject the lender to the penalty under the statute, there must be an actual receipt of the usurious interest; but though the penalty of the statute be not incurred till the usurious interest be received, still the contract may be void, without such receipt. Chitty on Contracts, 712. And this law seems in compliance with our statute, (second section), which contains the words, “ take, accept or receive.” Blydenbr. on Usury, 129.
We come now to the discussion of the last point assumed by plaintiff in error, “ that where the original contract is lawful, no subsequent taking of, or contract to take, illegal interest, will invalidate it ; and, therefore, that plaintiff may recover principal and interest of the original valid contract.” The authorities are lull and decided upon this point, and the doctrine cannot be denied. 8 Mass. 256. 5 Wendell, 595. Blydenburgh on Usury, 97, 102. Authorities cited by counsel for plaintiff in error. So also, 3 T. R., 539. 1 Saund. 294
*369 The notes given by Doggett and Cotton to Flake, were extinguished by the new and substituted note given by them to Mitchell on the 1st Jan’y., 1839.
The note of 1839, was clearly upon a good and valid consideration, and if that note h.ad been sued on, we are not prepared to say but that it would have remained unaffected by any-subsequent usurious contract, and all the legal interest upon it, have been enforced. It would seem by circumstances of the case, the inference is clear, (and usury may be inferred from circumstances, — Fulmer vs. Hays, 3 McCord, 256), that illegal interest was bargained for from 1 Jan-ury, 1840 to 1841, as evidenced by the small note for #362 61, and dated 1 Jan’y., 1841, and clearly given for the excess over and above legal interest on #14,504 65, for the period above set forth, to wit, from 1st January, 1840, to 1st January, 1841. This small note and the note sued upon, were given at one and the same time, the legal portion of the interest from 1840 to 1841, being secured in the note in suit, the illegal interest in the note marked 2, or small note.
The note of 1839, was extinguished by the substituted note of 1841, and the question now arises, was the latter note based upon or on account of any usurious contract ?
If the amount contained in the small note Had been embraced in the note in suit, clearly the contract would have been usurious. The fact that the notes were separate, we see, creates no difference.-— Their separation was a mere device, a shift, a shallow artifice. The true question is, what was the contract ? and we are indifferent as to the mode or manner of its enforcement. If the contract was usurious, the means resorted to to enforce its execution become impotent. These two notes, therefore, must be considered as constituting one entire transaction — as an (entirety), and embracing the same subject-matter.
It appears that these notes, the small note altogether, and the note in suit in part, were given to secure the interest or premium for past forbearance on the note of 1839, from 1840 to 1841. Is a contract to pay illegal interest for past forbearance illegal ? Clearly so ; and we refer to the case of Joseph L. Willie vs. Ezra Green, 2 New Hamp., 333. Here it was decided that a contract to pay more than legal interest for past forbearance is illegal. With these views, there can be no doubt but that the note sued on, intending to secure the *370 payment of illegal interest from 1840 to 1841, became an usurious contract. The interest contained in the small note being usurious, and being as it were a portion of the 'note in suit, it taints the legal in that, corresponding in time, for which it was given, to wit, from 1 Jan’y., 1840, to Jan’y., 1841, for the law says that when usurious interest is taken, the interest shall be void.
We are therefore of opinion, that as much of the interest on $14,-504 65, from 1 Jan’y., 1840, to 1 Jan’y., 1841, as is embraced in the note sued is void, and was properly deducted by the jury, in their verdict.
The facts further shew, that at the time the note in suit was given, another small note for $398 87 (3) was given, embracing the illegal interest on the note sued up to 1842, and that the amount of this note with compound interest at twelve and a half per cent, to 1 Jan’y., 1844, and all the accruing interest upon the note in suit, légal and illegal, were embraced in a separate note given on 1 Jan’y., 1844, marked 4. Here is another distinct note intended, beyond doubt, to evade the statute of usury. We think we have said enough in relation to this point, to declare that no interest is payable on the note declared on from the day it was given, it being clearly based on usurious consideration and therefore void. .
It is contended that the original consideration being valid, a new note substituted, though tainted with usury, would be valid, inasmuch as it was a subsequent agreement. We have already said, perhaps sufficient upon this subject; but we have authority strongly in point to show the reverse. Here it must be recollected there is a new note substituted and given in lieu of the old one. How much soever the principle contended for might have applied to the former note, it has no reference to the new contract. The case of Swartwout vs. Payne, 19 John. Rep., 296, is directly in point, and we set it out at some length.
The plaintiif in this case received from the defendant a note for four hundred dollars, drawn by Titus Goodman and endorsed by Viss-cher and Goodman, in payment for lands sold and conveyed by plaintiff and wife to defendant. The note was received as part of the consideration money, upon defendant’s assurance that it was good as the bank, and would be punctually paid.
Judge Spencer, who delivered the opinion of the Court, remarks :
*371 “ If it shall appear that the note was void for usury, and that the defendant knew it to be so, there can be no doubt of the plaintiff’s right to recoverthat is, on the original consideration of the contract, viz., the value of the land sold.
“ It appeared by the evidence, that the defendant received this note which he passed to the plaintiff) in renewal of a former note, and that on giving up the first note, and taking the note in question, the defendant exacted and took from T. Goodman, jun., an additional note for a premium for renewing the first note.”
Judge Spencer further goes on to say: “ The first note is not shewn to be usurious, and we must therefore consider that as a bona fide security, and a bona fide debt due from the parties on it to the defendant. The amount of the argument on the part of the defendant is, that the subsequent usury in taking the new note did not affect or destroy the antecedent debt, which was free from usury. This is undoubtedly true, and Gray vs. Fowler, 1 H. Black., 462, and 1 Saund., 295, A, and the authorities there cited; fully maintain the position. But it is equally certain, that if in receiving the new security, a rate of interest above seven per cent, was received for forbearance, the new securities are void by the statute; and in this view, it is immaterial whether the illegal interest was reserved and made payable by a distinct note, or was incorporated into one note. They are considered as one assurance and are all void, into whose hands soever they may come. The note being a nullity, according to the case of Maride vs.rHatfield, (2 John. R., 455), the plaintiff had a right to sue on the original con-contractJudgment for plaintiff.
With our views thus expressed, we think the verdict of the jury in the Court below was in compliance with law, and should not be disturbed. In the decision of the question we have, of course, regarded the subject in a point of view purely legal. Whether the law governing interest is founded upon true policy or political expediency, is not for us to enquire, nor for us to ask whether the taking usury is an act immoral in itself, or only rendered immoral by arbitrary enactment. We cannot draw distinctions in our decisions between malum prohibitum and malum in se, but must declare the law as we find it.

Per Curiam.

The judgment of the Court below is affirmed.