JAMES P. CLARK, *Appellant*, vs. WALTON P. GREY, et al., *Appellees*.

En Banc.

Opinion filed March 5, 1931.

*H. D. Wentworth,* for Appellant;
*Caraballo, Graham & Cosio,* for Appellees.

BUFORD, C. J.—We review here orders of the chancellor sustaining demurrers to the original and amended bills of complaint brought to foreclose a mortgage. The order sustaining the demurrer to the original bill of complaint becomes immaterial when we observe that the matters in controversy may be adjudicated on consideration of the order overruling the demurrer to the amended bill of complaint.

The original note and mortgage was for $5,750.00, with interest, payable ninety days after date. The pleadings show that $750.00 of the principal was in excess of the amount loaned and secured by the mortgage. The original bill of complaint and the amended bill of complaint each carried the allegation that $750.00 had been credited on the mortgage and note prior to the institution of the suit. The amended bill of complaint alleged that on the 3rd day of June, 1927, after maturity of the original note but before institution of suit, a stipulation was entered into between the parties whereby it is shown that the $750.00 was added to the actual loan and represented a bonus, attorney's fees, etc., etc., which the makers of the note and mortgage agreed to pay. The agreement stipulates, amongst other things:

WHEREAS, said Walton P. Grey and Frances E. Grey, his wife, and James P. Clark, did not contemplate or intend for the mortgage and note to be usurious, it is hereby stipulated and agreed between the said Walton P. Grey and Frances E. Grey, his wife, and James P. Clark, that the usurious part of the note and mortgage be disregarded and made of no effect in the manner as follows:

The said James P. Clark does hereby stipulate and agree with said Walton P. Grey and Frances E. Grey, his wife, that the $750.00 be deducted from the note and that the $5000.00 balance, which represents the total amount due from the said Walton P. Grey and Frances E. Grey, to the said James P. Clark, and that the said James P. Clark does hereby stipulate and agree that he shall only demand payment of the actual amount loaned to the said Walton P. Grey and Frances E. Grey, which is $5000 plus 8% interest from the date of the said note, and the said Walton P. Grey and Frances E. Grey, his wife, do hereby stipulate and agree with the said James

P. Clark that they hereby waive all rights of defense to the said note on account of the usurious part of the mortgage and note, and it is hereby stipulated and agreed by and between James P. Clark and Walton P. Grey and Frances E. Grey that in the event of foreclosure of said mortgage and note that the said James P. Clark shall only demand payment of the actual amount loaned, which is $5000, together with legal interest as aforesaid.

And it is further stipulated and agreed by and between James P. Clark and Walton P. Grey and Frances E. Grey, that the purpose and intention of this stipulation is to eliminate the usurious part of the note and mortgage; that all parties concerned acted in good faith in making the said mortgage and note, but that they discovered after making note and mortgage that they had made an illegal contract and to correct this error and to eliminate all illegality of the note and mortgage, and to make the same legal and binding upon all parties concerned, is the purpose and intention of the parties making this stipulation.

In consideration of the premises, it is hereby agreed by the said James P. Clark, that if the said Frances E. Grey and Walton P. Grey shall pay or cause to be paid the said sum of $5000.00 represented by said promissory note as now adjusted, plus interest at the rate of 8% per annum from the date of said note at any time within 60 days from this date, that said sum will be received with interest on said note, and that no attorney's fee, court costs or other charges shall be required or exacted of the said Frances E. Grey and or Walton P. Grey, irrespective of either the said note or maybe during said period of 60 days, place in the hands of an attorney for collection or for any other purpose.''

It is contended that the original note and mortgage were usurious and were void and unenforceable. Upon this

theory the demurrer to the amended bill of complaint was sustained.

The subsequent agreement between the parties eliminated the usurious element of the original contract, and, in effect, made a new contract between the parties which was in nowise usurious.

Mr. Chief Justice Browne, in an opinion prepared for this Court in Coe vs. Muller, et al., 74 Fla. 399, 77 Sou. 88, construing the statute here applicable, said:

"If the contract sued on is governed by the Act of 1909, which was in force when the suit was brought, and not by the Act of 1891, which was in force when the contract was made, the answer of Coe to Muller's cross-bill afforded a good defense, and the exceptions to the answers were wrongfully sustained. The question presented by the appellant's assignment of errors is: Did the act of 1909 repeal the act of 1891, and, if so, what effect did the repeal have on the contract sued on?

The act of 1909 repealed 'all laws and parts of laws in conflict therewith' and contained no saving clause. This undoubtedly repealed that part of the act of 1891 which penalized usurious contracts, and by the use of the word 'willfully' before the words 'violating the provisions' abolished the harsher rule of the act of 1891, and substituted therefor a more liberal one.

It is contended by the appellees that the repeal of the act of 1891 does not affect a usurious contract made while the statute was in force, and cites Mitchell v. Doggett, 1 Fla. 356, in support of his contention, which isolated paragraphs taken from the opinion seem to justify. The Court in that case was considering what effect the passage of the usury act of 1844 (Laws 1844 p. 52) had on a contract which was made prior to its passage while the usury act of 1833 was in force, and the opinion must be considered in connection with the stat-

utes which were under consideration. Section 3 of the act of 1833 (Comp. Laws 1839, p. 79) fixed the penalty for usury, and the act of 1844 merely changed the lawful rate of interest from 10 per cent to 8 per cent. It expressly repealed the first and second sections of the act of 1833, but left the penalty clause unrepealed, and this provided that on any usurious contract 'the interest on the same usurious contract shall be void and the obligor or obligors forever exonerated from the payment of the same.'

The opinion in Mitchell v. Doggett, supra, was predicated upon the theory that the contract sued on was void. At the outset the court said:

'The case at bar must stand upon the law in relation to the contract itself, and we can find no authority that declares that a contract rendered void by statute can, upon a repeal of that statute, acquire a vitality which it did not before possess. Sound policy, justice and morality unite in stern opposition to such a principle.'

Throughout the entire opinion the court made it apparent that it was considering a contract which the statute made utterly void, and we find these expressions therein:

'The law of 1833 declares that all interest over the rate of 10 per cent shall be void and the obligor forever exonerated from the payment of the same. To admit all this and to say that a contract declared a nullity by a statute, a contract that never had an existence, can, by the galvanic process of repeal of that statute, have infused into it a new life and being, so as to be enforced in a court of justice, we must admit, is at variance with all our notions of sound policy, morality and law.'

Again:

'We are clearly of the opinion that by the letter and spirit of the statute, whenever illegal interest is taken or contracted for, the whole interest is void.'

Neither the act of 1891 or 1909 makes a contract for usurious interest in excess of 10 per cent void. It is made unlawful and the usurer may suffer the loss of the entire interest if the borrower chooses to exercise his privilege of avoiding payment by proper plea charging the usury. It is a privilege he may exercise or not, and it may be taken from him or modified by legislative enactment. The act of 1891 allowed the borrower to defend against the payment of usurious interest whether contracted for willfully or not, and the act of 1909 deprives him of this defense, unless usury defended against was willful.

Usury being merely a statutory defense, not founded upon any common-law right, either legal or equitable, it is clearly within the power of the Legislature to take it away.

Regardless of what may have been the status of the rights of the parties under the original note and mortgage, the status to be considered is that which existed at the time of the institution of the suit and after the subsequent agreement above referred to had been executed by the parties.

It has been repeatedly held by this Court that, "Where a demurrer is filed some of the grounds of which go to the whole bill and others go only to a part of the bill, the demurrer will be overruled if there is any equity in the bill." Raulerson et al. vs. Peeples, 79 Fla. 367, 84 Sou. 370, and cases there cited. One of the grounds of demurrer was, "There is no equity in the bill."

In Patterson et al. vs. Berry, Circuit Court of Appeals, Ninth Circuit, 125 Fed. 902, the Court held:

"The defense of usury cannot be made by demurrer to a bill of complaint to foreclose a mortgage for both principal and interest of the debt, where such defense, under the statute, affects only the interest."

In Masterson vs. Grubbs, 70 Ala. 406, it is said:

"The illegal taint can be purged, or eliminated, however, in either of two ways: first, by a renewal of the note or contract, after it has passed into the hands of a *bona fide* purchaser for value, without notice of the usury; secondly, by a reformation of the contract, by which the *usurious interest is expunged* by remitting the excess, and only lawful interest is retained or exacted. McCullough v. Mitchell, 64 Ala. 250, 253, and cases cited; 2 Parsons on Bills & Notes, 420; Hammond v. Hopping, 13 Wend. 505; DeWoff v. Johnson, 10 Wheat. 367; Chadbourn v. Watts, 10 Mass. 121; Scott v. Lewis, 2 Conn. 132.

The latter principle, permitting the expurgation of the usurious taint by reformation, is the one chiefly affecting this case, and is fully sustained by the authorities above cited. It, moreover, harmonizes with the doctrine, now universally recognized, that the whole question of usury is one which depends very greatly upon the *intent* of the parties to the contract. Uhlfelder v. Carter, 64 Ala. 527; 1 Jones Mortg. #634. The first note given by appellant in this case, which was for the sum of six hundred dollars, was confessedly usurious, the interest on it being at the rate of twelve and a half per cent per annum. If, as the evidence tends strongly to show, this usurious note was reduced to the lawful rate of eight per cent. and the usury of the first note was expunged entirely on taking the note in suit, then the plea of usury in this action cannot be sustained. McClure v. Williams, 2 Vt. 210; Miller v. Hull, 4 Denio, 164."

In Ector vs. Osborne et al., 79 N. C. 667, 103 S. E. 388, it is said:

"There are four requisites of a usurious transaction: '(1). There must be a loan, express or implied; (2) an understanding between the parties that the money lent

shall be returned; (3) that for such loan a greater rate of interest than is allowed by law shall be paid or agreed to be paid, as the case may be; and (4) there must exist a corrupt intent to take more than the legal rate for the use of the money loaned.' Doster vs. English, 152 N. C. 341, 67 S. E. 755.

'The corrupt intent mentioned in the books consists in the charging or receiving the excessive interest with the knowledge that it is prohibited by law and the purpose to violate it. Our statute makes it usury if the interest is knowingly charged or received at the unlawful rate.' MacRackan v. Bank, 164 N. C. 26, 80 S. E. 185, 49 L. R. A. (N.S.) 1043 Ann. Cas. 1915D, 105.''

It appears to be well settled that, ''although a contract be usurious in its inception, a subsequent agreement to free it from the taint of usury will render it valid.'' De-Wolf vs. Johnson et al, 6 Law Ed. 343; Kassing vs. Ordway, 69 N. W. 1013; Thomas vs. Coffin, 62 Fed. 665; Cotton States Building Co. vs. Jones, 94 Tex. 497, 62 S. W. 741; Stout et al. vs. Ennis National Bank, 69 Tex. 384, 8 S. W. 808; Hensel vs. Bissell, 110 Wash. 568, 188 Pac. 774; Ryan vs. Newcombe, 125 Ill. 91, 16 N. E. 878; Putterbaugh vs. Farrell, 73 Ill. 213.

For the reasons stated, the orders should be reversed and it is so ordered.

Reversed.

WHITFIELD, ELLIS, TERRELL AND BROWN, J.J., concur.