TITLE & TRUST COMPANY OF FLORIDA v. ELLA A. DALE.

149 So. 373.
Division B.
Opinion Filed July 7, 1933.

*Marks, Marks, Holt, Gray & Yates,* for Appellant;
*Charles P. Cooper,* for Appellee.

BUFORD, J.—The appeal in this case is from an order overruling demurrers to the bill of complaint. The demurrers, if it is proper to denominate same in the plural, appear to have been embraced in one document and to have attached thereto a single certificate of counsel and affidavit of an officer of the defendant corporation. Therefore, the so-called demurrers will be treated as a single demurrer setting up special as well as general grounds of demurrer. The rule in regard to such demurrers is that, "where a bill makes any case for equitable relief and demurrer is directed to the whole bill, or certain grounds of the demurrer are directed to the bill in its entirety and others to only a part of the bill, such demurrer will be overruled." Battey v. Battey, 92 Fla. 512, 109 Sou. 584; Clark v. Gray, 101 Fla. 1058, 132 Sou. 832. It, therefore, follows that if there was equity in the bill the demurrers were properly overruled.

The appellant states the main question presented on this appeal to be:

"Where it is charged that an escrow agent or trustee agreed to accept moneys from various purchasers of lots in a subdivision, under a reorganization plan, and to hold the fund until it should be determined whether 51% of the purchasers would come into the plan and then, if such percentage did come in, to disburse the fund to pay for improvements, liens, taxes, etc., against the subdivision property; and it is conceded by the bill of complaint that the requisite number of lot purchasers did come into the plan and that the escrow agent did thereupon disburse the fund as it had been instructed to do, can one of the contributing lot purchasers maintain an equitable suit against the escrow agent to recover back from it the payments made by her

into said fund upon the ground that such escrow agent failed to obtain for her a deed according to a recorded plat; it being alleged that the owner of the subdivision failed to file for record its plat of that portion of the property in which complainant's lot was located?"

It appears to us that the appellant has started out with an erroneous premise and that the question involved is not as stated in the brief filed.

The bill of complaint in effect alleges that the defendant was a corporation clothed with the powers of a trust company; that it was authorized to make and sell abstracts of land titles and was authorized to sell, and did sell, insurance upon land titles; that as such it undertook to act as a medium through which a land development company undertook to compromise and settle outstanding land contracts with contract holders who had agreed by such contracts with the land company to purchase lands from the land company. That the purchase and sale of the lots of land was under several different plans of settlement. The contract purchasers had the right to select one of such plans of settlement. The complainant, as a contract holder, selected what was known as the cash-payment plan and delivered the cash to the defendant trust company to be delivered by it to the land company and to the development committee of such land company, upon the trust company simultaneously receiving from the land company, or the development committee, a good and sufficient deed of conveyance, and that it was agreed between the parties that the trust company would issue title insurance on the·lands conveyed and deliver such insurance with the good and sufficient deed of conveyance. That the closing of the transaction, the procurement of proper deeds conveying particular lots and parcels of land, was left to the judgment and discretion of the defendant trust company. That it became the duty of the

trust company, having accepted such responsibility and having assumed to act in the premises and having assumed to issue title insurance on the land involved, to procure a good and sufficient deed conveying certain lots and parcels of land to the defendant. That the trust company, having received complainant's money and delivered the same to the land company, disregarded its duty as above set forth and accepted a deed, and procured the recording thereof, which was not a good and sufficient deed conveying title to any particular property, but, on the contrary, there was not described in the deed any piece or parcel of land which could be identified on the ground from the description in such deed and that in truth and in fact there is no piece or parcel of land in Duval County which is known or identified by the description contained in such deed. That the defendant pretended to deliver title insurance to the complainant but that the purported policy of insurance was not a guarantee of any title because there is no piece or parcel of land in Duval County known or identified according to the description contained in the policy of title insurance. That neither the deed nor the policy described any definite or known lot.

Now, with the salient allegations of the bill of complaint thus before us and with the complainant alleging that the defendant trust company received the fund as trustee for her with the duty to hold the same for her use and benefit until a good and sufficient deed was delivered conveying to her the property sought to be purchased and vesting in her the fee simple title thereto, which duty she alleges was not performed, has she stated such a case as is cognizable in a court of equity?

If the allegations of the bill are true, then the trust company delivered complainant's money to the land company in violation of the trust. From all the allegations of the bill, and the exhibits thereto attached and made a part

thereof, it appears that it was the duty of the trust company to procure for the complainant from the land company a good and sufficient deed conveying fee simple title to the complainant to certain property and to get a clearly insured title under a proper title insurance policy, and if the trust company could not, and did not, procure such a deed, then it was the duty of the trust company to return the trust fund placed with it for that purpose. And, if the trust company, not receiving such a deed of conveyance and not being able to deliver to complainant such a policy of title insurance, paid over the money to the land company, such paying over of the money to the land company would constitute a wrongful diversion of a trust fund.

We think this alleged condition is sufficient to constitute grounds of equity jurisdiction. See Guaranty Trust & Savings Bank v. U. S. Trust Co., 89 Fla. 324, 103 Sou. 620.

The Supreme Court of the United States in the case of Clews v. Jamieson, 45 Law Ed. 1183, quoting with approval from Pomeroy on Equity Jurisdiction, 2nd Ed., said:

"All possible trusts, whether express or implied, are within the jurisdiction of the chancellor. In this case the committee, as trustee, was charged with the performance of some active and substantial duty in respect to the management and payment of the funds in its hands, and it was its duty to see that the objects of its creation were properly accomplished. The fact that the relief demanded is a recovery of money only is not important in deciding the question as to the jurisdiction of equity. The remedies which such a court may give depend upon the nature and object of the trust; sometimes they are specific in their character, and of a kind which the law courts cannot administer, but often they are of the same general kind as those obtained in legal actions, being mere recoveries of money. A court of equity will always, by its decree, declare

the rights, interest or estate of the *cestui que trust,* and will compel the trustee to do all the specific acts required of him by the terms of the trust. It often happens that the *final* relief to be obtained by the *cestui que trust* consists in the recovery of money. This remedy the courts of equity will always decree when necessary, whether it is confined to the payment of a single specific sum or involves an accounting by the trustee for all that he has done in the pursuance of the trust, and the distribution of the trust moneys among all the beneficiaries who are entitled to share therein.' I Pom. Eq. Jur. No. 158."

It, therefore, appears that the order of the chancellor overruling the demurrers was without error and should be affirmed. It is so ordered.

Affirmed.

DAVIS, C. J., and ·WHITFIELD, ELLIS, TERRELL and BROWN, J. J., concur.