90 So.2d 604 (1956)
Alfred E. SHORR, a single man, Appellant,
v.
William C. SKAFTE and Helen Skafte, his wife, Appellees.
Supreme Court of Florida. Special Division B.
October 24, 1956.
Rehearing Denied December 4, 1956.
Daniel G. Satin, Miami, for appellant.
Rogers, Towers, Bailey & Jones, Taylor Jones and Bette Towers Miller, Jacksonville, for appellees.
THOMAS, Justice.
The appellees were plaintiffs and the appellant was defendant in the chancery court. In this opinion we will refer to the parties as they were there designated. The suit was one to foreclose a mortgage and in the complaint it was alleged that the instrument was given 25 October 1951 to secure a promissory note evidencing an indebtedness of $6000. The note was payable six months after 1 November 1951 "with interest * * * at the rate of NONE per cent. per annum from ____ until fully paid. Interest payable semi-annually."
The defendant denied the indebtedness and averred that he was lent only $5000. *605 So, he charged in his answer, the plaintiffs by contrivance, contract and device, wilfully and knowingly charged him a sum of money greater than the amount loaned and an additional sum exceeding 25% per annum upon the principal, by reason of which the plaintiffs forfeited, under Sec. 687.07, Florida Statutes 1951 and F.S.A., the entire principal and interest.
The chancellor denied the defendant's motion for summary decree and a petition in certiorari challenging the order was denied by this court.
The cause was then referred to a special master who was directed to hear the testimony and to report it to the court with his findings and recommendations. In substance he recommended that a decree be entered for the amount of money received by the defendant, $5000, with interest at the legal rate from the date the suit was filed, and that the defendant be required to pay the costs and the plaintiffs' attorneys fee. The chancellor confirmed the report and entered a decree accordingly.
There is much testimony in the record and much argument in the briefs about the friendly relationship of the parties and the need of the defendant for the money in order that he might protect his investment in a business venture. For instance, it appears that there was some prospect that the plaintiff-Skafte would join the defendant in the enterprise, but that he later declined. This plaintiff was reluctant to make the loan, after he decided not to participate, but finally he agreed to do so on the terms reflected in the note and mortgage.
At this point we observe that the plight of the defendant could not operate to relieve the lenders of the effect of the usury law because doubtless the protection of the statute against inordinate charges for the use of money was designed to prevent a lender from taking advantage of a necessitous borrower. Stubblefield v. Dunlap, 148 Fla. 401, 4 So.2d 519; Hormuth v. Dickson, 115 Fla. 790, 156 So. 127.
The bald facts are that plaintiffs lent $5000 for six months and were to receive for the use of their money for that period the amount of $1000. Computed on a yearly basis the amount of interest was exactly forty per cent. Close study of the note in a search for information with reference to the charge to be made for the use of the money, other than the difference between the sum of money advanced and the sum promised to be paid, brings only confusion because in addition to the part of the note we have quoted containing the word "NONE" in the space provided for the interest rate and a blank instead of the date from which the interest should be computed, the note also carried the provision that "[d]eferred interest payments [would] bear interest from maturity at SIX per cent. per annum, payable semi-annually." So we are brought back to what we have called the "bald facts" that $5000 was lent for six months and that at the end of that time the lender was to get $1000 in addition to the amount he had advanced.
The defendant now asks whether or not (1) the transaction we have described was infected with usury and (2) it was his burden to prove that the lender knew of the usury laws and intended to violate them. In his first question the defendant states the premise that "NO FORMAL EXTENSION FOR PAYMENT [WAS] EVER MADE * * *."
The plaintiffs present the point that the borrower and lender "INNOCENTLY" entered into the agreement and that the character of the interest should be determined by the period that the loan actually ran, that is from the date it was made to the time the suit was filed. And next they contend that no forfeiture should be imposed, although more than ten per cent per annum was charged, because they entered into the agreement innocently and did not charge more than ten per cent wilfully or knowingly.
Before interpreting the contract in the light of the statutes, or discussing usury *606 or the motive of the lender it seems logical to explore the record to determine whether the defendant's claim that no extension was made, or the plaintiffs' claim that one was made, is supported by the evidence.
We preface our comment on this factor by citing the case of Clark v. Grey, 101 Fla. 1058, 132 So. 832, 834, in which, as plaintiffs say, it was held that "the status [of the loan with respect to its usurious features or lack of them] is that which existed at the time of the institution of the suit and after the subsequent agreement above referred to had been executed by the parties." (Italics ours.) In the cited case a definite agreement had been made by the parties to the loan about the elimination of the objectionable, or illegal, charge and that was the reason for the court's ruling that the time at which the character of the loan should be judged would be shifted from the inception of the loan to the time of suit.
We find no such agreement here.
The plaintiffs may have relied upon the master's observation to support their contention that there was an agreement to extend. He wrote in his report: "In July or August, 1952, Skafte telephoned Shorr and reminded him that the note was past due. Shorr asked him to wait until things went along a little better and promised payment. Skafte agreed; although no time was set." According to the record the plaintiff-Skafte called the defendant on the telephone and reminded him that the note was past due. After a conversation about the status of defendant's affairs Skafte offered to forbear "for a little while." In a later conversation Skafte confirmed this willingness to defer for a while collection of the debt, but "[he] didn't specify any time." Skafte, himself, testified that "there was no time limit set at all" with regard to payment of the note.
We do not find in these negotiations such certainty or formality as would justify our applying in this case the rule announced in Clark v. Grey, supra. Nor do we think that the decision in Benson v. First Trust & Savings Bank, 105 Fla. 135, 134 So. 493, 142 So. 887, and 145 So. 182 governs this phase of this controversy. Even were we to draw the conclusion from the complex report of that litigation that a majority of the then members of the court concurred in the opinion as distinguished from the judgment a difference in a pivotal fact would make the decision inapposite. In the cited case the note was to become due thirty days after default on the part of the borrower, a date that apparently could not have been anticipated when the loan was made; in the present case the due date was fixed as six months from November first.
We reiterate what was said in Carter v. Leon Loan & Finance Co., 108 Fla. 567, 146 So. 664; "It has been repeatedly held that the usurious character of a contract must be determined as of the date of its inception, and, if usurious at that time, no subsequent transaction will purge it. When such contracts are renewed by a new or substituted contract, usury follows, and becomes a part of the latter contract, making it vulnerable to the defense of usury in like manner as the original contract. * * * This rule does not apply when the old contract is abandoned and a new one is entered into free from the vice of the old." We cannot agree that a contract usurious in its inception can be purged of its vices by mere delay in its enforcement. We think the contract in the present case was a plain violation of the statute and that the plaintiffs should suffer the consequences if, of course, they wilfully and knowingly charged more that 25% per annum upon the sum they lent. Sec. 687.07, supra.
Evidently the master dealt with no conflict in the testimony of the parties with reference to this feature of the case for he found that "[n]either Mr. nor Mrs. Skafte nor Shorr were aware of any violation of the usury laws." This finding is *607 based on categorical denials by defendant and by the plaintiffs that they were aware any law was being violated. In other words it is now a question whether or not the assertion of pure ignorance should lead to a decision that the maker of a usurious loan should not be held accountable.
It is a matter of deciding the proper application of law to this situation and this court is not precluded by the decision in Harmon v. Harmon, Fla., 40 So.2d 209, or the many decisions that have followed it from reviewing the action of the master, and the subsequent action of the chancellor in matching the facts and the law.
The ignorance of the borrower is of small consequence; the important factor is the willfulness of the lender. And the matter of willfulness is not absolutely closed by the bare statement of the lender that he was unconscious of wrongdoing. If such were the law the prohibition would amount to nothing. The circumstances must be taken into account and here the principal one is, as we wrote in the beginning, quite simple. By mere mathematical computation $1000 is 20% of $5000, and when figured on a yearly basis is 40% of the principal amount per annum. If we were to accept the view that the computation even if comprehended by the lender was meaningless because the statute was unknown to him, we would subscribe to the rule that ignorance of the law is a complete defense to usury and that the irrefutable statement of that ignorance would relieve a would-be usurer from any penalty for his transgression. Certainly a man's actions are indicia of his intentions. Although it is not conclusive the fact that the amount stated in the note is greater than the amount loaned evidences the intent to violate the law. No evidence having been offered by way of explanation the view that infraction was intended is justified. Bochicchio v. Petrocelli, 126 Conn. 336, 11 A.2d 356, 127 A.L.R. 457.
We conclude that the circumstances established clearly a purpose to collect unconscionable interest and that this purpose could not be explained away by a profession of ignorance on the part of the lender.
Reversed.
DREW, C.J., ROBERTS, J., and CARROLL, Associate Justice, concur.