97 So.2d 860 (1957)
Robert PERRY and Celia Perry, his Wife, Appellants,
v.
Abraham BECKERMAN and Felix Halzband, Appellees.
Supreme Court of Florida.
October 18, 1957.
Rehearing Denied November 26, 1957.
George Cheren, Norman Somberg, Thomas H. Anderson and Anderson & Nadeau, Miami, for appellants.
Max R. Silver, Daniel Satin and Phillip Goldman, Miami, for appellees.
THORNAL, Justice.
Appellants Perry, who were plaintiffs below, seek reversal of a final decree for a *861 money award which was adjudicated to be enforceable against the appellants' homestead, and which was based on a counterclaim of the appellees Beckerman and Halzband.
To determine the questions raised we must decide whether the claim of the appellees was infected with usury as contended by appellants and, if not, the extent of its enforceability against the homestead of appellants Perry and wife.
In October, 1953, appellants entered into a contract with one "Babe" Shargaa. Mr. Shargaa is not a complete stranger to this Court. Shargaa v. State, Fla. 1955, 84 So.2d 42. By this agreement Shargaa agreed to construct a ten-unit motel on appellants' homestead property. The construction contract was revised slightly by a subsequent document executed by the same parties in December, 1953. Appellants Perry by the contract agreed to pay Shargaa $39,500 for the construction of the motel. In December, 1953, the Perrys also executed to Shargaa a promissory note in the amount of $39,500. In addition to building the motel Shargaa agreed by the contract to pay off for the Perrys a mortgage of about $900 and to pay over to them in cash about $1,100. In January, 1954, the Perrys allegedly executed a mortgage on the homestead property securing the previously signed note. The Perrys signed the mortgage in the presence of only one witness and they did not appear before the Notary Public who on the face of the mortgage took the acknowledgment.
On the day the mortgage was executed, Shargaa sold the note and mortgage to Beckerman for an agreed discount of twenty percent of the face thereof. The note and mortgage bore ten percent interest. Beckerman later assigned a one-half interest in the note and mortgage to the appellee Halzband. For the $39,500 note and mortgage the appellees paid over to Shargaa $5,000 which they knew would not be used for the improvement of the Perrys' property. They also later paid the Perrys the $2,000 in accord with the original contract and ultimately built the motel through a sub-contractor at a cost of about $27,000. Thus, in actuality the Perrys received approximately $29,000 in money and value for the $39,500 note, mortgage and construction contract originally executed with Shargaa.
In May, 1954, before any work was done on the construction of the motel, Shargaa in the meantime having defaulted completely on his agreement, the Perrys executed another separate document authorizing Beckerman and Halzband to complete the motel building on their homestead in accord with the original building contract.
This suit was instituted by the Perrys to cancel the note and mortgage because of alleged usury. Beckerman and Halzband counterclaimed asking foreclosure of the mortgage and note. They did not ground their counterclaim on any rights they might have under the construction contract. In response to the counterclaim the Perrys, among other things, asserted that the building was not constructed in accordance with the specifications provided by the contract.
By his final decree, on motion for summary judgment filed by both parties and supported by contesting affidavits and depositions, the Chancellor held the mortgage to be unenforceable against the homestead because it was not witnessed or acknowledged according to law. He held that there was no usury because the note was executed to evidence a debt created by the construction contract rather than for the lending of money. He gave judgment on the note for the face amount thereof, plus interest, costs and attorneys' fees, all totaling $45,277.15. By the final decree it was provided that the full amount of the judgment should constitute a lien on all of the property of the appellants including their homestead. Pending the litigation and on the basis of the complaint and sworn answer and counterclaim, but without supporting testimony, the Chancellor appointed a receiver for the property with directions to take *862 charge of the place, collect the rents, including a stipulated rent from the appellants, and otherwise operate and manage the motel business. This final decree and order appointing the receiver are now brought here for review.
The appellants contend that the receiver was erroneously appointed. They insist that the Chancellor committed error in holding that the note and mortgage were free of usury and that he compounded the error by awarding judgment against them particularly with reference to their homestead.
The appellees contend that the note and mortgage were not usurious and that they were entitled to recover the judgment on the note. By cross-assignment they insist that the Chancellor committed error in holding the mortgage itself to be unenforceable against the homestead property.
We first dispose of that phase of the decree holding the improperly witnessed mortgage to be unenforceable against the homestead of the appellants. The Chancellor here ruled correctly. Scott v. Hotel Martinique, Fla. 1950, 48 So.2d 160; Abercrombie v. Eidschun, Fla. 1953, 66 So.2d 875. See also, Zimmerman v. Diedrich, Fla. 1957, 97 So.2d 120. Under these decisions the faulty acknowledgment affected only the recordability of the mortgage. Lack of two witnesses, however, prevents the enforcement of the mortgage against the homestead absent an estoppel, which is not here apparent.
With the mortgage out of the way we consider the assault on the note based on the charge of usury. The Chancellor was of the view that the note as between appellants and Shargaa, the original appellee, evidenced a promise to pay for the construction of the motel rather than the loan of money. Again we must agree with the Chancellor. Although on the surface the transaction here might appear to be an unconscionable one, we must follow our decisions which hold that the usury statutes condemn usury charges made as an incident to a loan of money. We have held that the same rule does not apply to a transaction representing the purchase price of property. Davidson v. Davis, 59 Fla. 476, 52 So. 139, 28 L.R.A.,N.S., 102; Nelson v. Scarritt Motors, Inc., Fla. 1950, 48 So.2d 168; Clark v. Grey, 101 Fla. 1058, 132 So. 832. Similarly here the construction contract was in the nature of a speculative venture in which both owner and builder participated. In lieu of cash the builder agreed to construct the building for a stipulated sum to be repaid in installments over a period of time. There was at the outset uncertainty as to the extent of Shargaa's profit and when the deal was made it was not then definitely ascertainable whether the appellants would receive more or less than they bargained for or the financial extent of the difference either way. Even though it is alleged that the appellants were ill-informed and ignorant in the matter of handling the details of a business transaction of this nature, the fact remains that all parties to the original contract were perfectly competent. The appellants may have entered into a bad bargain but it is not within our province to salvage them by revising or setting aside their contract.
The conclusions which we have heretofore reached leads us to the proposition that a money judgment on the note was in order, subject to a consideration of the extent of its enforceability against the homestead of the appellants. We repeat at this point for coherence that the counterclaim of the appellees was based on the note and mortgage and not on the alleged construction contract. In order to arrive at the ultimate conclusion which we believe to be consonant with applicable authorities, we must also recall that as between the appellants and the appellees, Beckerman and Halzband, the note was acquired by the appellees from Shargaa at a tremendous discount merely to evidence an advance of money to Shargaa *863 to enable him to complete his contract to build the motel. It also seems clear from this record that when portions of the money were advanced to Shargaa the appellees well knew that such portions would not be employed in the fulfillment of the construction contract. It is obvious that at least $7,000 of the advance never went into the motel property. Five thousand dollars of this advance went to Shargaa with the knowledge of the appellees that it would be used to pay off debts of Shargaa not related to the Perry job. In addition $2,000 went to the appellants to pay off another mortgage and as cash.
Section 1, Article X of the Florida Constitution, F.S.A. exempts from forced sale under any process a homestead owned by the head of a family residing in this state. An exception to this exemption is a claim based on an obligation contracted by the homestead owner for the erection or repair of improvements on the homestead real estate. It was the view of the Chancellor below that even as between the appellants and the appellees, the claim of the appellees was covered by the exception to the homestead exemption noted above.
We are compelled to differ with the Chancellor on this point. While an obligation contracted for the erection or repair of improvements on homestead real estate is enforceable against the homestead, such an obligation to be so enforceable must be one contracted directly for labor and materials used in the construction of the improvement. An advance of money borrowed to purchase materials or to pay off labor is not within the scope of the exception to the homestead exemption. In such case the contract is to repay money loaned or expended and it is not in the nature of a contract to pay for the erection of the improvements or for the labor. The reasons for this distinction are well stated in the early case of Lewton v. Hower, 18 Fla. 872. See also, Wilhelm v. Locklar, 46 Fla. 575, 35 So. 6; 40 C.J.S. Homesteads § 105, pp. 546-547. Limiting our consideration, therefore, to the obligation between the appellants and the appellees insofar as the note itself is concerned, we are led to the conclusion that in the purchase of the note, the appellees were merely advancing money to Shargaa supposedly to be used for the fulfillment of the construction contract. Again, bearing in mind that the counterclaim of the appellees was based solely on the note and mortgage, we are forced to the conclusion that the judgment grounded on the note could not as such be enforced against the homestead.
We are not here holding that the appellees were not entitled to a general judgment on the note. We are holding that this judgment was not enforceable against the homestead property of the appellants and to this extent the decree will have to be reversed.
In any subsequent consideration of this cause by the Chancellor wherein the construction contract supplemented by the construction agreement between the appellants and appellees should be involved, the parties and the Chancellor are reminded that the appellants are entitled to an opportunity to establish their defense based on the failure of the appellees to build the building in accordance with the specifications of the original contract, as well as other terms of the agreement, express or implied, such as good workmanship.
We further point out that the construction contract carried no provision for attorneys' fees and that the homestead of the appellants would not be liable for the $2,000 advanced by appellees in the form of cash. In other words it is the sum of this holding that upon a subsequent trial of the cause, the liability of the homestead of the appellants, if any, will have to be grounded on the construction contract supplemented by the written agreement between the parties rather than on the note and mortgage. We *864 take note of the fact in passing that no effort was here made to amend the pleadings of the parties to meet the proofs which developed on the motions for summary judgment.
We have further considered the contention that the receiver was improperly appointed. In this regard the appointment of the receiver apparently was grounded on the defectively executed mortgage. While there were allegations that the property would suffer destruction and deterioration if the defendants were left in possession, these allegations were denied and we find no evidence whatsoever to sustain this conclusion. The receiver was appointed without taking of any proofs and was continued in office even after the court determined that the mortgage was unenforceable. On the basis of the record here apparent we see no foundation for the appointment of the receiver. We hold that such appointment was erroneous and the order appointing the receiver is reversed. In disposing of the matter we find no justification for charging the costs of the receivership against the property or any income therefrom that might have accrued during the receivership.
For the foregoing reasons the general judgment on the promissory note is affirmed but that portion of the final decree providing that the judgment constitutes a lien on the homestead of the appellants and the order appointing the receiver are both reversed.
The cause is remanded for further proceedings consistent herewith.
TERRELL, C.J., DREW and O'CONNELL, JJ., and PARKS, Circuit Judge, concur.