**In the Matter of Raymond J. FELDMAN, Bankrupt.**
**No. 33341.**

United States District Court
D. Connecticut.

Sept. 30, 1966.

Lynch & Traub, New Haven, Conn., for bankrupt.

Richard D. Zeisler, Kanter & Zeisler, Bridgeport, Conn., for trustee.

Sidney L. Goldstein, New Haven, Conn., for petitioning creditor, General Investment Co.

## MEMORANDUM OF DECISION ON PETITION FOR REVIEW

ZAMPANO, District Judge.

This is a petition by General Investment Company of Connecticut, Inc., to review an order of the Referee, entered August 10, 1966. The issues presented are: 1) whether the usury statutes bar enforcement by General of a promissory note executed by the bankrupt in 1962 and, 2) if so, whether the note was purged of its invalidity and rendered enforceable by a subsequent, non-usurious agreement between the parties.

The following findings of fact by the Referee are not disputed:

1. Pursuant to a borrowing agreement dated August 23, 1962 and made by General, as the lender, and the bankrupt, as the borrower, General agreed to refinance an unpaid balance of $10,410.61 owed to it by the bankrupt on an earlier borrowing and to lend the bankrupt an additional sum of $15,089.39, making a total indebtedness of $25,500.00. To evidence this indebtedness the bankrupt and his wife executed a promissory note to General in the amount of $25,500.00 which provided for interest at the rate of 12% per annum and for payment of principal and interest over a period of years, the entire balance on the note to be due and payable on August 23, 1977.

2. This indebtedness to General was claimed to be secured by a security interest in certain assets which were sold free and clear of that security interest for about $1,800.00 with the claimed security interest being transferred to those proceeds of sale.

3. * * *

4. At the closing held on this transaction General charged the bankrupt a "commitment" fee of $300.00 which was deducted from the proceeds of the loan payable to the bankrupt. This commitment fee was a charge made by General to cover the cost of its overhead on the loan, and was admitted by General in its brief filed in this matter to be a charge to cover General's "expenses for investigating and making the loan."

5. Thereafter, the bankrupt made certain of the periodic payments on this note while the interest charge was 12% per annum.

6. Subsequently, by agreement made February 24, 1965 between General

and the bankrupt and his wife, it was agreed that the interest rate on the promissory note dated August 23, 1962, on which the unpaid principal balance was then $25,500.00, would be reduced to 10% per annum, with further provisions for the manner of payment of the principal and interest. The bankrupt had requested that the interest be reduced and the reduction in interest agreed upon was to make it easier for the bankrupt to meet his obligation.

Upon these facts, the Referee concluded:

(a) General's commitment fee of $300.00 resulted in total charges for the loan that exceeded the maximum statutory rate of interest of 12% per annum fixed by sections 37–4 and 37–6 of the General Statutes of Connecticut and rendered the loan usurious and unenforceable under section 37–8 of the General Statutes;

(b) the usurious charge was made with the unlawful intent to exact a payment for the use of the money which exceeded the amount allowed by statute;

(c) the eventual reduction of the interest rate to 10% per annum did not cure the original violation of the statutes in view of the provision of section 37–8 of the statutes that no action can be brought to recover principal or interest, or any part thereof, on any loans prohibited by sections 37–4 or 37–6 of the statutes.

In this Court, General does not challenge the Referee's findings and conclusions with respect to the original note but does claim error as a matter of law in the disallowance of its claim under the 1965 agreement. It relies primarily on Kilbourn v. Bradley, 3 Day 356 (Conn. 1809) wherein the court stated:

"The statute against usury, on principles of public policy, renders void contracts upon usurious consideration. But the lender incurs no penalty, unless he actually takes usury; and courts of equity, on relieving against oppression or extortion, order the repayment of the sum really loaned, or due, with the lawful interest. The moral obligation of the borrower to repay the principal sum actually loaned, with the lawful interest, is unimpaired. If the lender will expunge the usury, and the borrower voluntarily assents to repay the sum loaned with lawful interest, it is an act of justice forbidden by no principle of public policy, and which constitutes a good consideration for a new contract." Id. at 363.

Initially, this case seems to lend clear support to General's position. However, a study of the statutes with which the *Kilbourn* court was concerned, coupled with a review of the historical background of the present statutes and the prevailing case law in Connecticut, casts doubt as to the applicability of *Kilbourn* to the facts of the instant case.

In 1809, the statutes provided that usurious contracts were void. 1808 Statutes of Connecticut, Title CLXX, §§ 1, 2. In equity the borrower could seek relief and, if the instrument was found to be usurious, he was required to pay back only the principal. Id. § 10. If, however, the lender actually accepted a usurious payment, he was subject to a penalty at law and if found guilty, he forfeited one half the principal to the state and the other half to the one who informed against him. Id. § 5. Criminal sanctions were also available. Id. § 6.

Thus, in *Kilbourn*, the court correctly interpreted the prevailing statutes and ruled that, "unless he actually takes usury", the lender may recover the sum loaned with lawful interest.

Modern statutes, however, when first enacted in 1907 (1907 P.A. ch. 238) and revised in 1911 (1911 P.A. ch. 244), "radically changed our law against usury." Contino v. Turello, 101 Conn. 555, 561, 126 A. 725, 727 (1924). These statutes penalize not only the receipt of usury but also the very making of an agreement with usurious rates.

The applicable provisions of the Connecticut law provide that no person or corporation shall "directly or indirectly,

loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive therefor interest at a rate greater than twelve per cent per annum" (Conn.Gen.Stat. § 37–4); that no person or corporation shall "charge a borrower with any expense of inquiry as to his financial responsibility or expense of negotiating a loan * * * unless the total of such charges and of the interest agreed upon is, during any one year, twelve per cent of the loan or less," (Conn.Gen.Stat. § 37–6); and that "[n]o action shall be brought to recover principal or interest, or any part thereof", on any loan so prohibited, "or upon any cause arising from the negotiation of such loan," (Conn.Gen. Stat. § 37–8).

■ The Referee's unchallenged findings with respect to the original note contain all the ingredients of a usurious transaction. The unlawful act of accepting a $300 "commitment" fee coupled with the 12 percent interest charge for the year 1962 tainted the transaction with usury since it stipulated "for the payment of more than lawful interest for the use of money." Community Credit Union, Inc. v. Connors, 141 Conn. 301, 306, 105 A.2d 772, 774 (1954). However the fact alone of arithmetical usury does not void the agreement, for an apparently usurious note is always "susceptible of an explanation which strips the act of the attendant intent required to [render] it offensive to the law". DeVito v. Freberg, 94 Conn. 145, 148, 108 A. 547, 548 (1919). The intent necessary must be a specific, unlawful intent. Contino v. Turello, supra, 101 Conn. at 558, 126 A. 725. This is not to say that there must be a specific intent to violate the statute. All that is necessary is the intent to exact a payment beyond the statutory limit. Manchester Realty Co. v. Kanehl, 130 Conn. 552, 555,

36 A.2d 114 (1944). The issue poses a question for the trier, Mutual Protective Corporation v. Palatnick, 118 Conn. 1, 4, 169 A. 917 (1934), whose findings will be accepted by a reviewing court in the absence of clear error. In re Madelaine, Inc., 164 F.2d 419 (2 Cir. 1947); In re Gurinsky, 105 F.Supp. 42, 43 (S.D. N.Y.1951); Atlas Realty Corp. v. House, 123 Conn. 94, 192 A. 564 (1937).

■ The intent of the lender is vital, for it influences the scope of the penalty. The usury statutes were enacted for the weak and necessitous as shields against oppression; they are not offensive weapons to be used to confiscate the property of another to obtain an unjust windfall. A balance is reached by a consideration of the equities involved. See In re Lico Manufacturing Co., 201 F.Supp. 899, 904–906 (D.C.Conn.1961), aff'd Cohn v. Lico Mfg. Co., 323 F.2d 871 (2 Cir. 1963).

■ To detail the leading Connecticut cases on the subject would serve no useful purpose. It need only be noted that two central principles emerge from the review: 1) recovery of both principal and interest on a usurious note is barred if the lender had the unlawful intent to exact payments which exceed the amount of interest allowed by statute,[1] and 2) in the absence of unlawful intent, recovery may be had for the amount actually loaned,[2] or, where the circumstances warrant, for principal and legal interest.[3]

In the instant case, since the Referee found the original usurious note was made with unlawful intent, it was void and unenforceable.

The question remains whether the taint of usury was cured by the subsequent transaction of February 24, 1965. There are no Connecticut cases on all fours with the present case. In *Kilbourn*, the lender took no usury prior to the sub-

---

1. Kruzansky v. Scombul, 113 Conn. 569, 573, 155 A. 836 (1931); Manchester Realty Co. v. Kanehl, supra; Atlas Realty Corp. v. House, supra.

2. Contino v. Turello, supra.

3. Wesley v. DeFonce Contracting Corporation, 153 Conn. 400, 404, 216 A.2d 811 (1966); In Re Lico Manufacturing Co., supra, 201 F.Supp., at 906.

sequent transaction; in the instant case there were prior tainted payments.

If the original contract is usurious, a renewal or substituted contract, particularly where usurious payments have been accepted with unlawful intent, is also tainted and the defense of usury is available to the borrower. Bochicchio v. Petrocelli, 126 Conn. 336, 339, 11 A.2d 356, 127 A.L.R. 457 (1940). However, if the original usurious contract is cancelled, and the lender is free from unlawful intent or has not gained the benefits of the usury, a new independent agreement free from usury purges the original usury and the second obligation is enforceable. See 55 Am. Jur., Usury, §§ 96, 97; 74 A.L.R. pp. 1184–1188.

In the instant case the Referee found the lender entered into the original usurious contract with unlawful intent. At the time the second contract was executed in February, 1965, the lender had accepted and had retained usury. A comparison of the two instruments clearly indicates that the 1965 note was merely a modification of the payment and interest provisions of the 1962 obligation. The second note specifically refers to and incorporates vital provisions of the first contract. Had there been no usury, and the borrower defaulted, the lender's legal action for collection or foreclosure would by necessity be based on the first contract, as revised and modified by the second. Where two agreements are in fact one contract the usury statutes avoid the whole. Usury "does not stop short when a single head of the Cerebus is lopped off. It is satisfied only by the extinction of life." Progressive Welfare Asso., Inc. v. Morduchay, 124 Conn. 485, 489, 200 A. 813, 815 (1938).

Moreover, General's claim, that the borrower "was saving" $500 a year under the second agreement, and therefore the 1965 contract was supported by fresh, independent consideration, must fail. The bankrupt was obliged to pay

nothing under the original contract; his lot was not improved when he signed the subsequent agreement. Halloran v. Fischer, 126 Conn. 44, 9 A.2d 290 (1939).

Accordingly, the petition is denied.