**BARCLAYS BANK INTERNATIONAL, LIMITED, Plaintiff**

v.

**HENRY O. CREQUE and SOUTHERN CROSS DEVELOPMENT CORPORATION, Defendants**

Civil No. 75-133

District Court of the Virgin Islands

Div. of St. Thomas and St. John

July 1, 1976

LOUD & CAMPBELL, ESQS. (ATTY. ROGER L. CAMPBELL, of counsel), St. Thomas, V.I., *for plaintiff*

ARNOLD M. SELKE, ESQUIRE, St. Thomas, V.I., *for Henry O. Creque*

Southern Cross Dev. Corp., *Unrepresented*

CHRISTIAN, *Chief Judge*

### MEMORANDUM AND ORDER

This is a most unfortunate case, in which the law dictates a particular result despite clear equities to the contrary. Much as I disagree with the law, at least as applied to this particular case, I cannot reject it, nor prevent the

defendant herein from potentially receiving a windfall gain.

The material facts are not in dispute: On May 7, 1973, plaintiff Barclays Bank International Ltd. (hereinafter, Barclays), made a loan to defendant Creque in the sum of $63,000 to purchase an apartment house from defendant Southern Cross Development Corporation. Creque executed a promissory note for the amount of the loan. The interest rate was stated in the note to be ten percent per annum. Principal and interest were to be paid in successive monthly installments of $832.86, to commence on June 10, 1973 and continue until July 10, 1978, "at which time any unpaid balance of principal hereof and all interest accrued hereon and then unpaid shall be due and payable." Exhibit A. The agreement further provided that: "Each such payment shall be applied first on interest then due and the remainder on principal." Id.

The loan was secured by a first priority mortgage on Parcels Nos. 3I-16 and 3I-17, Estate St. Peter, Little Northside Quarter, St. Thomas, Virgin Islands. Creque made the first five payments on time. The sixth was made a month late. No payments were then made until June 1974, when Creque made a lump sum payment of $4,164.30. Since then, no payments have been made. The total amount paid by Creque was $9,994.34. As of February 28, 1975, the date the complaint was filed in this case, Creque was alleged to owe $59,690.61 principal and $2,974.35 interest.

In July 1974, Barclays recomputed the interest rate for the entire loan at nine percent per annum after discovering that the original interest rate of ten percent was in violation of 11 V.I.C. § 951, which restricts interest rates on loans secured by first priority mortgages to nine percent. The payments which had already been made were "reallocated between interest and principal." Affidavit of

Alan Pestell, p. 2. Barclays stated that its recomputation resulted in a credit due Creque of $774.67, which sum was credited to his loan account. The account was then charged no interest for several months until the credit was exhausted. See Memorandum of Law (Plaintiff's), p. 3. Meanwhile, Barclays made "numerous attempts and demands . . . on Mr. Creque to bring his loan current but to no avail." Affidavit of Alan Pestell, p. 2. Barclays finally brought suit in February 1975.[1]

The defense of usury was raised by Creque for the first time in his Answer, filed September 8, 1975.

Barclays has now submitted a motion for summary judgment. It seeks to have Creque held in default on the promissory note, to allow Barclays to foreclose on the mortgage, and to declare Creque's usury defenses to be without merit. Barclays admits that the promissory note provided for a usurious rate of interest, but argues, inter alia, that the penalties provided in 11 V.I.C. § 953, and § 954 not be applied against it on the theory that intent is a necessary element of the offense of usury.

It is transparent that Barclays has gained virtually nothing as a result of the initial imposition of the ten percent interest rate. Had the loan been drawn at the maximum legal rate from the beginning, the only difference would have been that Creque would have had the use of the $774.67 for a somewhat longer period of time than he did. Moreover, it is also clear that Creque has no viable legal excuse for failing to meet his obligations other than that the original loan was usurious. Further, Barclays, but for the usury problem properly filed suit—despite Creque's

---

[1] The complaint seeks only recovery, inter alia, of the principal together with interest at the rate of nine percent per annum through January 31, 1975, plus $16 per day thereafter.

arguments concerning failure of Barclays to demand payment or declare that it was accelerating the loan.[2]

Nevertheless, after having reviewed a host of cases which have dealt with the problem of "purging" usurious contracts, I have reached the unfortunate but unavoidable conclusion that the retroactive reduction by Barclays of the ten percent interest rate was inadequate to eliminate the taint of usury. The cases indicate that the type of retroactive correction method employed by Barclays in this case cannot be accepted. See, e.g., Hurley v. National Bank of Commerce, 529 S.W.2d 788 (Tex. Civ. App. 1975); Davidson v. Commercial Credit Equipment Corp., 499 S.W.2d 68 (Ark. 1973); Redbarn Chemicals, Inc. v. Bradshaw, 494 S.W.2d 720 (Ark. 1973). It appears that in order to avoid usury penalties, the lender must abandon or cancel the usurious contract, e.g., In Re Feldman, 259 F.Supp. 218 (D. Conn. 1966); Southwestern Investment Co. v. Hockley County Seed and Delinting, Inc., 516 S.W.2d 136 (Tex. 1974); Gunn and Plumbing, Inc. v. Dania Bank, 252 So.2d 1 (Fla. 1974); Kogan v. Bergman, 53 Cal. Rptr. 371 (Cal. App. 1966), and both lender and borrower must then enter into a new, independent, non-usurious contract. See Feldman, supra; Southwestern Investment, supra; Gunn, supra. See also Bjornstad v. Perry, 443 P.2d 999 (Idaho 1968). Cf. Clark v. Grey, 132 So. 832 (1931). At the very least, the old contract must be

---

[2] The note provides:

> Upon default in payment of any such installments when due, the whole of the principal sum then remaining unpaid and all interest accrued thereon shall, at the option of the holder hereof, become immediately due and payable without demand or notice.

The mortgage provides:

> If (a) payment or performance of Mortgagor's obligations not be made at the times and in the amounts called for under this . . . instrument . . . then mortgagee may do any or all of the following without notice to or demand on Mortgagor . . . (1) declare Mortgagor's obligation immediately due and payable or . . . performable; or . . . (7) bring an action to foreclose this Mortgage.

modified or reformed, by mutual agreement of the parties, and not by unilateral act of the lender.

 As for Barclays' contention that "corrupt intent to violate the usury laws is a necessary element of the offense", I must disagree. Section 954 of title 11 speaks for itself.

> If it is ascertained in any action brought on any contract, that a rate of interest has been contracted for greater than is authorized by this chapter, whether directly or indirectly, in money, property or other valuable thing, or that any gift or donation of money, property, or other valuable property, or other valuable thing has been made or promised to be made to a lender or creditor, or to any person for him, the design of which is to obtain for money loaned or for debts due or to become due, a rate of interest greater than that specified by the provisions of this chapter, the same shall be usurious and shall work a forfeiture of the entire interest on the debt.

The word "design", which does indicate an intent requirement, appears only in connection with the "gift or donation" clause of the sentence, as determined by the structure thereof. A tortuous reading of the statute would be required to couple "design" with the first portion of the sentence dealing with loan contracts. I am confident that the Legislature recognized that intent could be included as an element of the offense, but declined to make it so. I have uncovered no cases in this jurisdiction, reported or otherwise, which suggest a contrary conclusion.[3]

The question which still remains is whether summary judgment can be granted. Section 954 of title 11 of the Virgin Islands Code provides:

> The court . . . shall render judgment for the amount due on the sum loaned or the debt contracted, without interest, against the

---

[3] The result would be different were Barclays organized to carry on the business of banking under any Act of Congress. In such a case, our local statute would be pre-empted by 12 U.S.C. § 86, which requires that usurious rates be charged "knowingly". And see 12 U.S.C. §§ 37, 85.

defendant, and for the costs of the action, against the plaintiff, whether such action is contested or not.

This section offers little guidance under the present set of circumstances.

■ I am of the opinion that, pursuant to 11 V.I.C. § 953, Creque is entitled to receive twice the amount of *all* interest actually paid by him through June 1974. Creque is also entitled to pay no further interest on the remaining principal.

However, Barclays is entitled to a return of its principal, and may still foreclose the mortgage it has on the St. Peter property if Creque does not repay the principal.

I hold, therefore, that Barclays shall produce for the Court the records it has which reflect the allocations it made of the $832.86 monthly payments between principal and interest up through June 1974—*before* it recomputed the interest down to nine percent. Creque will then be entitled to twice the total interest actually paid to that date according to these records. If this double interest does not offset the sum that Creque would have owed Barclays on February 28, 1975, had the entirety of each monthly payment been allocated to principal alone, then Creque will be declared in default and Barclays will be entitled to declare the entire principal due and payable, and to foreclose on the mortgage. If the double interest does offset the sum, then Creque will not be in default and the suit will be dismissed, with costs awarded against plaintiff. Cf. Yellow Bird, Inc. v. LaBeau, Civ. No. 1975/809 (D.V.I. —St. Croix, filed April 12, 1976).

■ Accordingly, summary judgment will be denied until such time as the above-mentioned records and figures are provided.

ORDER

The premises considered and the Court being fully advised,

IT IS ORDERED that plaintiff's motion for summary judgment, be, and the same is hereby DENIED.