252 So.2d 1 (1971)
GUNN PLUMBING, INC., a Florida Corporation et al., Petitioners,
v.
The DANIA BANK, a Florida Banking Corporation, Respondent.
No. 40331.
Supreme Court of Florida.
July 28, 1971.
Rehearing Denied September 17, 1971.
*2 Milton A. Fried, Miami, for petitioners.
Robert E. Dubow, of Walden & Dubow, Dania, for respondent.
ADKINS, Justice.
By petition for certiorari, we have for review a decision of the District Court of Appeal, Fourth District (239 So.2d 88) on grounds of direct conflict with a prior decision of this Court (Coral Gables First National Bank v. Constructors of Florida, Inc., 119 So.2d 741) on the same point of law. Fla. Const., art. V, § 4, F.S.A.
For clarity, the Petitioners will be referred to as "Defendants," and Respondent as "Plaintiff."
On April 16, 1965, Defendant, Gunn Plumbing, Inc., made, executed and delivered a promissory note in the original principal amount of $75,000 to Plaintiff. Payment of the note was guaranteed by Defendant, W.W. Gunn, Sr., President and principal stockholder of Defendant, Gunn Plumbing, Inc.
Defendants allege that at the time of the loan the sum of $73,400 was deposited to the account of Defendant, Gunn Plumbing, Inc., (being the net proceeds of the loan) and Plaintiff was paid the sum of $25,000 for making the loan.
The note was not paid at maturity and the Plaintiff accepted a renewal promissory note. When the renewal note was not paid at maturity, the Bank instituted suit against the maker, Gunn Plumbing, Inc., and the guarantor, W.W. Gunn, Sr. Defendants interposed the defense of usury. This suit was settled by the parties under the provisions of a written stipulation entered into by Plaintiff and the Defendants. The stipulation contained the following provisions:
"I. The defendants, and each of them, hereby withdraw the several defenses which they have raised in their answer and such defendants do hereby irrevocably admit each and every allegation in the plaintiff's complaint. (Emphasis supplied)
"II. The defendants, and each of them, hereby admit that the total amount due the plaintiff in this cause as of April 19, 1966, is $82,732.32, * * *. The defendants, and each of them, irrevocably acknowledge and admit that the plaintiff is entitled to a final judgment in this cause for said total amount of $82,732.32. Further, these defendants, and each of them, jointly and severally admit that they have no defenses, counterclaims or set-offs to the right of the plaintiff for the entry of an immediate final judgment in said total sum of $82,732.32.
"III. Notwithstanding the admissions contained in Paragraph I and II herein, the plaintiff is willing and does hereby agree to compromise said total indebtedness *3 of $82,732.32 to a lesser indebtedness of $80,607.33, * * *.
"VI. The defendant, W.W. Gunn, Sr., hereby agrees to guarantee, absolutely and unconditionally, the payment of the renewal note for $70,000.00 and the payment of the note for $2,500.00 for attorney fees, the forms of which are attached hereto. The form of guaranty agreement shall be substantially similar to the form of guaranty agreement attached to the original complaint in this cause. Further, the defendant, W.W. Gunn, Sr., agrees to cause his wife, Evelyn I. Gunn, to join in the execution of such guaranty agreement so that she will also unconditionally and absolutely guarantee the payment of the said notes. The defendant, W.W. Gunn, Sr., hereby acknowledges that a substantial consideration for his agreement to give such guaranty is the willingness of the plaintiff to accept the renewal note * * *.
"VIII. The defendants, and each of them, agree that a certified copy of this stipulation may be entered into evidence, without objection on their part, in any future cause of action involving the said renewal note for $70,000.00 * * *."
Pursuant to the terms of the stipulation, a promissory note and personal guarantee were executed and delivered to Plaintiff by Defendants. This note was not paid and Plaintiff again instituted suit. Defendants filed their answer and attempted to raise the affirmative defense of usury. A motion for summary judgment on behalf of Plaintiff was granted and judgment was entered in favor of the Plaintiff Bank.
Upon appeal, the judgment of the trial court was affirmed.
Defendants say that the affirmance is in conflict with the well-settled principle that the usurious character of a loan is determined in its inception and, if usurious, no subsequent transaction will cure it. As stated in Coral Gables First National Bank v. Constructors of Florida, Inc., supra:
"The general rule followed in this state is that the usurious character of a contract must be determined as of the date of its inception, and if usurious at that time, no subsequent transactions will purge it. When such contracts are renewed by a new or substituted contract, usury follows and becomes a part of the latter contract, making it vulnerable to the defense of usury in like manner as the original contract. This is not true, however, when the old contract is abandoned and a new one is entered into free from the vice of the old." (pp. 746-747)
If every element of usury charged to exist in the first loan contract is abandoned in a new agreement and the borrower voluntarily agrees to carry out the latter, the new contract will be enforceable. As stated in Carter v. Leon Loan & Finance Co., 108 Fla. 567, 146 So. 664 (1933):
"If the usurious factor in the first contract is carried into the new contract in any form, it is not purged of usury. The old obligation must be given up and abandoned, but, when this is done, and the borrower assents to a new or substituted contract in which he voluntarily agrees to pay the obligation with lawful interest, it is an act of justice forbidden by no principle of public policy, and will be enforced." (pp. 664-665)
In the case sub judice, it was not necessary for the District Court to determine whether or not every element of usury charged to exist in the original promissory note was abandoned by the subsequent contract of the parties. The issue before the District Court in the case sub judice was whether the affirmative defense of usury could be waived and, if so, whether such defense was waived or, in the alternative, whether Defendants were estopped from asserting the defense of usury by virtue of the written stipulation. The question before this Court is whether the decision of the District Court is in conflict with Coral *4 Gables First National Bank v. Constructors of Florida, Inc., supra.
This Court has followed the general rule that usury is purely a personal defense created by statute for the protection of borrowers and, therefore, any borrower may waive his right to claim the benefit of such statute. See 13 F.L.P., Interest and Usury, § 31; 33 Fla.Jur., Usury, § 54. In Mackey v. Thompson, 153 Fla. 210, 14 So.2d 571 (1943), relied upon by the District Court, this Court indicated its acceptance of the general rule in saying:
"Moreover, usury being a purely personal defense which may be availed of, or waived, at the election of the party aggrieved, it has no especial claims upon the indulgence and favor of the court, but must be disposed of upon the same principles and in the same manner as other defenses." (p. 573) See also Shaffran v. Holness, 102 So.2d 35 (Fla.App.2d, 1958).
A stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the parties and upon the Court. Also, a stipulation entered into during the course of one action may, unless expressly limited by its terms, be recognized in another action or proceeding. 22 F.L.P., Stipulations, § 12, and cases cited therein.
The usury statute in this State does not have the effect of invalidating contracts for interest at a rate higher than the statutory maximum, but only accords to the obligor the privilege of setting up, or waiving, affirmative defenses of usury in respect to such contracts. Yaffee v. International Company, Inc., 80 So.2d 910 (Fla. 1955), relied upon by the District Court.
The Defendants accepted the benefits of the stipulation and are not in a position to assert a defense to the new obligation which necessarily arose prior to the execution of the stipulation and the creation of the new obligation. Defendants were represented by counsel in the prior suit which resulted in the stipulation. It was supported by a good and valuable consideration, was acted upon and performed by the parties and gave rise to an estoppel which would prevent Defendants from asserting any defense, counterclaim, or setoff which arose prior to its execution.
Defendants took no affirmative action to rescind, reform or void the terms of the stipulation. In Dunscombe v. Smith, 139 Fla. 497, 190 So. 796 (1939), this Court commented on the effect of a stipulation entered into in a prior action which was introduced as evidence in a subsequent action:
"This Court is committed to the rule that it not only approves but favors stipulations and agreements on the part of litigants and counsel designed to simplify, shorten or settle litigation and save costs to the parties, and the time of the Court, and when such stipulations or agreements are entered into between parties litigant or their counsel, the same should be enforced by the court, unless good cause is shown to the contrary. In order to obtain relief against stipulations, the regular course is not to ignore or attempt to evade it, but to make a seasonable and affirmative application by formal motion to the court, on notice and supported by affidavit for its withdrawal or revocation." (p. 799)
The District Court in relying upon Mackey v. Thompson, supra, and Yaffee v. International Company, Inc., supra, held that the defense of usury had been waived by the Defendants. The rule of law set forth in Coral Gables First National Bank v. Constructors of Florida, Inc., supra, relied upon by Defendants for conflict, was not considered applicable by the District Court. Therefore, there is no conflict.
The writ of certiorari having been improvidently issued, it should be discharged.
It is so ordered.
*5 ROBERTS, C.J., and ERVIN, CARLTON and BOYD, JJ., concur.
DEKLE, J., dissents with Opinion.
DEKLE, Justice (dissenting):
Stipulation in the prior law suit "withdrawing" the defense of usury in that case does not meet the standard which this Court has set for purging usury. It is by remitting the excess.[1] It is clear on the face of the stipulation that it is no more than a continuation of the same old initial obligation alleged to be usurious. It does not constitute a "new contract" at all under the exception that our opinion sets forth to the general rule that the usurious character of such a loan continues and follows any renewal thereof.[2]
We long ago established the rule and its exception in Clark v. Grey, 101 Fla. 1058, 132 So. 832 (1931), when we said (p. 834):
"The illegal taint can be purged, or eliminated, however, in either of two ways: first, by a renewal of the note or contract, after it has passed into the hands of a bona fide purchaser for value, without notice of the usury; secondly, by a reformation of the contract, by which the usurious interest is expunged by remitting the excess, and only lawful interest is retained or exacted. [emphasis added] McCullough v. Mitchell, 64 Ala. 250, 253, and cases cited; 2 Parsons on Bills & Notes, 420; Hammond v. Hopping, 13 Wend. [N.Y.] 505; De Wolf v. Johnson, 10 Wheat. 367, 6 L.Ed. 343; Chadbourn v. Watts, 10 Mass. 121, 6 Am.Dec. 100; Scott v. Lewis, 2 Conn. 132."
The district court holding and Coral Gables First National Bank v. Constructors of Fla., 119 So.2d 741 (3d DCA Fla. 1960), are in conflict, giving jurisdiction to this Court and supporting reversal of the summary judgment for the Bank on the allegedly usurious loan of $75,000 at a cost of $25,000 of such loan. Such defense should be heard on the merits.
Coral Gables First National Bank holds that as an integral part of this "new contract," that the old one be "abandoned" and that "a new one is entered into free from the vice of the old." (pp. 746-747) There is no "abandonment" when one structure is built on the ruins of the other. It is apparent that the stipulation which is treated as the "new contract" is in no way "free from the vice of the old" inasmuch as it continues the same allegedly usurious rates and same amounts, and even adds to them the additional costs and $3,000 attorney's fee for the filing of the pleadings in that case. Moreover, it requires the signature of respondent wife which is apparently without consideration to her. The stipulation worsens the alleged usury rather than purging it as this Court has required.[3]
Mrs. Evelyn I. Gunn, who is gratuitously added on the new obligation, cannot be considered as having entered into any new, curative "contract" nor to have "abandoned" any earlier one, nor to have waived a defense of usury to this present claim against her. This is the first instance in which she appears in what has to be the only contract as to her. In no way can it be said that the principles enunciated as to the "old" obligors carry over as to the newly added wife. She has never had her day in court and the cause must in all justice be reversed, at least as to Petitioner Evelyn I. Gunn.
Our opinion neglects to mention further conflict with Clark v. Grey, supra, specifically holding that usury can only be expunged by remitting the excessive interest *6 and retaining only lawful interest, which of course was not done in the instant case. Such a provision in the stipulation would have brought it within the principles set forth in Clark. Failing to do so, and instead simply continuing the same transaction with additional charges, keeps it within the purview of Coral Gables First National Bank, supra, and Clark v. Grey, supra.
The majority opinion treats the usury defenses solely as a matter of "waiver," citing authorities limited to that point and thus declares "no conflict." The matter is not so easily concluded. Treatment on this sole basis defeats the basic purpose of the usury statutes to protect the borrower from the usurious lender. The statutes were intended to place a borrower in a position more nearly equal to that of the naturally advantaged lender, who is otherwise without restraint in what he may demand of a pressed borrower.
The criterion here enunciated is but an invitation to the unfair lender simply to obtain the type of "waiver" so adroitly and unilaterally devised in this case, and to have the borrower immediately after the loan to sign and leave with the lender such a protective device. Unfortunately, by the very nature of the necessity to borrow money in distress situations, the borrower is frequently in such a bind that he will "sign anything" to get the loan he so desperately needs. For all that appears, petitioners remained in that position when they felt they "had" to sign what their lender demanded. We would be in a better position to determine this if the question of usury, still not satisfied or settled by a judgment on the pleadings here, were heard, as justice clearly demands.
It is in the cornerstone case of Clark, supra, (upon which the later cited cases on usury defenses are based) that we first established the means of curing the "taint" of usury. No exception by waiver in the circumstances here was recognized. Hand-in-hand with the purging of the usury was always the earlier quoted language, clearly setting forth the condition of remitting the excess in any such new agreement. This was not done here, and the usurious defense should be heard.
I therefore strongly protest and dissent from the majority view, which neglects to consider the total foundation of the "new contract" concept upon which the opinion is erected.
NOTES
[1] Clark v. Grey, 101 Fla. 1058, 132 So. 832 (1931).
[2] Coral Gables First National Bank v. Constructors of Fla., 119 So.2d 741 (3d DCA Fla. 1960).
[3] See Footnote 1, Id.