# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D20-565

_____

JOSHUA HOLCOMBE,

Appellant,

v.

CITY OF NAPLES/JOHNS EASTERN
COMPANY, INC.,

Appellees.

_____

On appeal from an order of the Judge of Compensation Claims.
Jack A. Weiss, Judge.

Date of Accident: August 6, 2018.

September 15, 2021

M.K. THOMAS, J.

In this workers' compensation case, Joshua Holcombe (Claimant) appeals an order denying compensability of his hypertension. He argues that the Judge of Compensation Claims (JCC) erred by finding evidence of hypertension in the pre-employment physical examination that he underwent upon entering service as a law enforcement officer, so as to preclude his reliance on the presumption of occupational causation provided by section 112.18, Florida Statutes (2018). For the foregoing reasons and under the specific facts presented, we affirm.

*I. Facts*

As a teenager, Claimant underwent a liver transplant, requiring him to take anti-rejection medications for fifteen years or until 2003. A side effect of the medications, which the parties agree he experienced, was secondary hypertension.[1] The parties further stipulated that the secondary hypertension resolved when Claimant stopped taking the anti-rejection drugs. Several years after a cessation of the medications, the City of Naples (Employer) hired Claimant as a law enforcement officer. He underwent a pre-employment physical examination (PEP)[2] upon entering service in 2007. As part of the PEP, Claimant was required to complete a self-report medical history questionnaire. He responded "yes" to a question regarding any history of high blood pressure. As part of the physical, the examiner reviewed a note from Claimant's primary care physician advising that his hypertension had returned to normal upon cessation of the medications.

Several years into his service, Claimant was diagnosed with essential hypertension, also known as primary hypertension.[3] To

---

[1] Secondary hypertension is "arterial hypertension produced by a known cause, e.g., hyperthyroidism, a kidney disease, etc., in contrast to primary hypertension that is of unknown cause." Stedman's Medical Dictionary, STEDMANS 426460 (2014).

[2] The term "pre-employment physical" is useful shorthand even though this physical exam need not strictly be "pre-employment"; "the characterization of the examination as 'pre-employment' is mere dicta." *City of Tarpon Springs v. Vaporis*, 953 So. 2d 597, 598–99 (Fla. 1st DCA 2007) (holding that examination begun ten days before claimant began working and completed fifteen days after he began working satisfied section 112.18); *see also City of Homestead v. Foust*, 242 So. 3d 1169, 1171–72 (Fla. 1st DCA 2018) (holding that twenty-one months before hiring date was not "upon entering into" service); *Cumbie v. City of Milton*, 496 So. 2d 923, 924 (Fla. 1st DCA 1986) (holding that "nearly two years" after hiring date was not "upon entering into" service).

[3] Essential hypertension is "hypertension without known cause"; its synonyms are "idiopathic hypertension" and "primary

obtain workers' compensation benefits, he asserted entitlement to the presumption in section 112.18 that hypertension is occupationally caused. The Employer/Carrier (E/C) denied compensability of the claim arguing that the presumption did not apply as the PEP contained evidence of hypertension. Claimant filed a Petition for Benefits requesting compensability of "arterial and cardiovascular hypertension."[4] Ultimately, the JCC denied compensability after concluding that the examination contained evidence of hypertension, precluding Claimant's reliance on the presumption.

*Medical Evidence*

Both parties obtained experts via independent medical examinations (IME), pursuant to section 440.13(5), Florida Statutes. Claimant's IME, Dr. Pianko, opined that Claimant did not develop his current hypertensive condition, "essential hypertension," until 2015 and that the PEP did not reveal evidence of the essential hypertension condition. In summary, Dr. Pianko opined that the hypertension for which Claimant seeks compensability is "a different type of disease than the secondary hypertension that he had back in 1988." On cross-examination, Dr. Pianko agreed that essential and secondary hypertension are both "forms of hypertension."

The E/C's IME, Dr. Perloff, testified that the PEP (inclusive of the pre-employment medical questionnaire) did not document evidence of essential hypertension but did reveal secondary hypertension. Although he believed the two to be "different" conditions, he also agreed that both are forms of hypertension.

hypertension." Stedman's Medical Dictionary, STEDMANS 426280 (2014).

[4] Appellant claimed his hypertension was "arterial or cardiovascular" as required. *See Williams v. City of Orlando*, 89 So. 3d 302, 303 (Fla. 1st DCA 2012) (confirming this Court's ruling that to be compensable, hypertension must be "arterial or cardiovascular). Essential hypertension may be compensable so long as it "arterial or cardiovascular." *See id.*

3

*Stipulations and Argument*

Prior to the merits hearing, the parties entered multiple stipulations. These included:

2. The only condition currently at issue is essential hypertension.

. . . .

7. The [PEP] contains evidence of secondary hypertension in the form of references to a resolved secondary hypertension condition resulting from autoimmune medications the claimant took for approximately one year following his liver transplant when he was 16 years of age, but not essential hypertension.

. . . .

10. Essential hypertension is not the same as secondary hypertension.

11. The sole issue for determination by the JCC is whether evidence of secondary hypertension as explained in paragraph number [7] above on the [PEP] prevents application of Section 112.18, F.S. to essential hypertension.

Claimant argued: 1) the evidence of secondary hypertension on the PEP does not preclude reliance on the presumption of section 112.18 because the statute's prerequisite that the PEP not contain evidence of "any such condition" clearly means *the* condition for which Claimant seeks compensability; 2) the medical testimony establishes that essential and secondary hypertension are different conditions; and 3) his PEP contained no evidence of hypertension, because the self-reported medical history was not a diagnosis and not part of the physical examination. In essence, he argued a claimant must be suffering from and be diagnosed with the subject condition at the time of the physical examination for

4

the presumption to be extinguished. Thus, a prior medical history does not constitute "evidence" and is not a meaningful component.

The E/C defended the claims arguing that the sole issue for determination was whether evidence of secondary hypertension on the PEP precludes reliance on the presumption of section 112.18 for an essential hypertension claim. It asserted that the plain language of section 112.18 and the testimony of both medical experts that "secondary" and "essential" hypertension are both "hypertension," foreclosed Claimant's enjoyment of the presumption.

The JCC denied compensability of Claimant's essential hypertension, accepting the opinions of both IMEs that "hypertension is hypertension." The JCC concluded that, because the PEP contained evidence of hypertension, Claimant's reliance on section 112.18 was precluded. Of importance, the JCC relied upon the parties' stipulation that "the PEP contains evidence of secondary hypertension in the form of references to a resolved secondary hypertension condition resulting from autoimmune medications Claimant took . . . following his liver transplant when he was 16 years of age, but not essential hypertension."

Claimant moved for rehearing arguing that he had not stipulated, and the doctors did not testify, that the PEP contains evidence of essential hypertension—only that it documents evidence of secondary hypertension. He argued that the doctors' opinions were medical but not legal opinions and that, because his secondary hypertension could not be compensable under section 112.18, its past existence could not preclude the presumption of section 112.18 regarding essential hypertension.

The JCC denied rehearing and detailed that the denial of compensability was based on his acceptance of the parties' stipulation that the PEP contained evidence of secondary hypertension combined with the doctors' opinions that secondary and essential hypertension are both "hypertension." He explained as follows:

> What I was asked to decide was whether evidence of secondary hypertension on the PEP precludes the

presumption of essential hypertension. To answer that question, I accepted the testimony of both IMEs that secondary and essential hypertension is hypertension. As such, I concluded that Claimant's agreement the PEP contained evidence of secondary hypertension meant, when construed with the facts before me, that he agreed the PEP contained evidence of hypertension. This was not rewriting the stipulation; I simply provided the plain meaning of the stipulation in light of the facts before me. And to the extent the Court believes I have not accepted the parties' stipulation, this was done consistent with the principle that a JCC is not required to accept the parties' stipulation where the same is not supported by competent evidence.

## II. Analysis

Because the JCC's ruling is based on the interpretation of a statute and a stipulation, we review the issue *de novo*. *See, e.g., City of Tavares v. Harper*, 230 So. 3d 918, 920 (Fla. 1st DCA 2017) (interpreting *de novo* section 112.18's phrase "any evidence"); *Klatt v. Wal-Mart Stores, Inc.*, 913 So. 2d 79, 80 (Fla. 1st DCA 2005) (reviewing JCC's interpretation of joint stipulation *de novo*).

On appeal, Claimant argues that evidence of secondary hypertension on the PEP, a different type of hypertension than essential, does not preclude the presumption's application here. To answer this question, we first look to the plain language of the statute establishing the presumption at issue. "[W]hen the language of the statute is clear and unambiguous and conveys a clear and definitive meaning, there is no occasion for resorting to the rules of statutory construction; the statute must be given its plain and obvious meaning." *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (quoting *A.R. Douglass, Inc. v. McRainey*, 137 So. 157, 159 (Fla. 1931)). Courts are "without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power." *McLaughlin v. State*, 721 So. 2d 1170, 1172 (Fla. 1998) (quoting *Holly*, 450 So. 2d at 219).

6

Section 112.18(1)(a), Florida Statutes (2018), which establishes the presumption at issue, provides:

> Any condition or impairment of health of any Florida . . . law enforcement officer . . . caused by tuberculosis, heart disease, or hypertension resulting in total or partial disability or death shall be presumed to have been accidental and to have been suffered in the line of duty unless the contrary be shown by competent evidence. However, any such . . . law enforcement officer must have successfully passed a physical examination upon entering into any such service . . . which examination failed to reveal any evidence of any such condition.

The companion statute to section 112.18 is section 943.13, Florida Statutes (2018). It establishes law enforcement officers' minimum qualifications for employment, and states:

> In order to be eligible for the presumption set forth in s. 112.18 while employed with an employing agency, a law enforcement officer . . . must have successfully passed the physical examination required by this subsection upon entering into service as a law enforcement officer . . . with the employing agency, which examination must have failed to reveal any evidence of tuberculosis, heart disease, or hypertension.

§ 943.13(6), Fla. Stat. (2018).

We find that the question of whether evidence of secondary hypertension on a PEP precludes a claimant's use of the presumption of section 112.18 for essential hypertension, is answered by a straightforward application of the plain and unambiguous language of the relevant statutes. Neither section 112.18(1) nor section 943.13(6) incorporate any qualifying or restricting language for the terms "tuberculosis, heart disease, or hypertension"; instead, the statutes require "any evidence of the conditions of "tuberculosis, heart disease, or hypertension" without qualification. §§ 112.18(1)(a), 943.13(6), Fla. Stat. (2018). The Legislature chose to use broad terms and we will not second guess their selection. Thus, we find that under the plain language of the

7

statute, evidence of secondary hypertension on a PEP may preclude a claimant's use of the presumption of section 112.18 for essential hypertension.

Claimant argues that *Harper* compels a finding of compensability. However, Claimant misconstrues our decision. The narrow holding of *Harper* announced that, "the single reported elevated blood pressure reading at the [PEP] did not constitute evidence of the condition of hypertension." *Harper*, 230 So. 3d at 919. There, medical experts opined "that an isolated elevated blood pressure reading could be caused by hypertension, but also by a number of other conditions unrelated to hypertension, including what is commonly referred to as 'white coat' syndrome." *Id.* at 920. For a definitive diagnosis of hypertension, the medical experts in that case opined that two or three abnormal readings within a certain period of time are required. *Id.* The majority declined to accept the Employer/Carrier's proposed interpretation of section 112.18 that "any evidence" of a condition precludes the presumption—as such an application would permit any possible symptoms of a condition, without a diagnosis of the condition, to preclude the presumption provided by section 112.18. *Id.* at 921. We held as follows:

> This additional language means that the factually specific nature of the presumption requires evidence specific to the facts of the claims and in the context of the unique medical history of the claimant—not simply "any evidence" as it may apply to the population at large.

*Id.*

Here, the parties stipulated that the PEP documented evidence of secondary hypertension.

This Court's precedent indicates affirmance is required. In *Miami-Dade Cnty. v. Davis*, 26 So. 3d 13, 15 (Fla. 1st DCA 2009), before going to work for the employer, the claimant had a history of undergoing open heart surgery. The PEP noted his history of heart disease but found him fit for duty. *Id.* He subsequently experienced an acute coronary episode while off duty and surfing. *Id.* This Court determined that because the claimant's PEP

8

indicated he had a history of heart disease before entering employment with the employer, the presumption did not apply. *Id.* at 17. In reaching this conclusion, this Court did not identify as an issue the fact that manifestation of the claimant's heart disease while surfing (acute coronary episode) was not an identical condition that led to his need for open heart surgery before employment with that employer. *Id.* In ruling the presumption did not apply, this Court necessarily concluded that both constituted "heart disease." *Id.*

Likewise, in *Talpesh v. Village of Royal Palm Beach*, 994 So. 2d 353, 354–55 (Fla. 1st DCA 2008), this Court applied the plain and unambiguous terms of the statute in awarding the presumption to the claimant, finding "the pre-employment physical did not reveal evidence of heart disease." In reversing the JCC's denial of the presumption, this Court found that the claimant's PEP documented a history of high blood pressure but not coronary artery disease. *Id.*

Here, unlike *Talpesh*, it is undisputed that Claimant was diagnosed with hypertension prior to entering service with the Employer, and his PEP revealed evidence of that hypertension. Both medical experts agreed that there was evidence of secondary hypertension on the PEP and that essential and secondary hypertension are both forms of hypertension. Furthermore, Claimant stipulated that the PEP contained evidence of secondary hypertension.

Claimant also asserts that the stipulation that the PEP contained evidence of secondary hypertension referred to evidence of a mere self-reported reference to a condition and was not an agreement as to the weight that reference should be provided or an agreement as to whether the condition actually existed. However, this argument lacks merit as Claimant joined the E/C here in stipulating that the sole issue for the JCC was whether evidence of secondary hypertension on the PEP prevents application of the presumption to essential hypertension.

Regarding Claimant's arguments that: 1) the evidence of hypertension was insufficient because it was hearsay answers to a questionnaire rather than evidence revealed by a physical

examination; and 2) that the Employer failed to present competent substantial evidence of existing hypertension discovered during the PEP. Again, these arguments are contrary to the very stipulations Claimant entered into prior to the merits hearing. Specifically, Claimant stipulated that "the pre-employment physical contains evidence of secondary hypertension in the form of references to a resolved secondary hypertension condition resulting from autoimmune medications that claimant took . . . following his liver transplant." "As a general rule, '[a] stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the parties and upon the Court.'" *Turner v. Miami-Dade Cnty. Sch. Bd.*, 941 So. 2d 508, 509 (Fla. 1st DCA 2006) (quoting *Gunn Plumbing, Inc. v. Dania Bank*, 252 So. 2d 1, 4 (Fla. 1971)).

## *III. Conclusion*

Finding that evidence of secondary hypertension on Claimant's PEP precludes his use of the presumption of section 112.18 for essential hypertension, we affirm the final order on appeal.

AFFIRMED.

ROWE, CJ., and B.L. THOMAS, J., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Jason L. Fox, Oliver & Fox, P.A., Tampa, for Appellant.

George A. Helm, III and George W. Boring, III, Public Entity Legal Solutions, Lake Mary, for Appellees.